**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:                                           Chapter 11

SHIFTPIXY, INC. *et, al.*[1]                      Case No. 24-21209-LMI

    Debtors.                                 (Jointly Administered)

_____/

## NOTICE OF FILING ASSET PURCHASE AGREEMENT

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

    1.    Attached hereto as **Exhibit A** is a signed copy of the Asset Purchase Agreement

("APA") of the Successful Bidder G3 Business Services, LLC.

Dated December 11, 2024.

                         **DGIM Law, PLLC**
                         *Counsel for the Debtors*
                         2875 NE 191st Street, Suite 705
                         Aventura, FL 33180
                         Phone: (305) 763-8708

                         */s/ Isaac Marcushamer*
                         Isaac Marcushamer, Esq.
                         Florida Bar No. 0060373
                         Email: isaac@dgimlaw.com
                         Monique D. Hayes, Esq.
                         Florida Bar No. 843571
                         Email: monique@dgimlaw.com

## CERTIFICATE OF SERVICE

---

[1] The Debtors are: (i) Shiftpixy, Inc.; (ii) Shiftpixy Staffing, Inc.; and (iii) ReThink Human Capital Management, Inc. The address of the Debtors is 1401 NW 25th Street, Miami, FL 33142.

**I HEREBY CERTIFY** that a copy of the Notice was served via CM/ECF Notification and/or U.S. Mail to all parties on the attached service list on this 11th day of December, 2024.

_/s/ Isaac Marcushamer_
Isaac Marcushamer, Esq.
Florida Bar No. 0060373

Label Matrix for local noticing
113C-1
Case 24-21209-LMI
Southern District of Florida
Miami
Mon Dec  2 14:16:19 EST 2024

Balanced Management, LLC
1800 Second St.
Unit 603
Sarasota, fl 34236-5990

Century Tacos, Inc.
c/o Leyza B. Florin, Esq.
Sequor Law
1111 Brickell Avenue
Suite 1250
Miami, FL 33131-3133

Foundry ASVRF Sawgrass, LLC
c/o Michael S. Provenzale
P.O. BOX 2809
ORLANDO, FL 32802-2809

Golden Taco, Inc.
c/o Leyza B. Florin, Esq.
Sequor Law
1111 Brickell Avenue
Suite 1250
Miami, FL 33131-3133

Los Angeles West Taco, Inc.
c/o Leyza B. Florin, Esq.
Sequor Law
1111 Brickell Avenue
Suite 1250
Miami, FL 33131-3133

Pacific Coast Taco, Inc.
c/o Leyza B. Florin, Esq.
Sequor Law
1111 Brickell Avenue
Suite 1250
Miami, FL 33131-3133

ReThink Human Capital Management, Inc
4101 NW 25th Street
Miami, FL 33142-6725

ShiftPixy Staffing, Inc
4101 NW 25th Street
Miami, FL 33142-6725

ShiftPixy, Inc.
4101 NW 25 Street
Miami, FL 33142-6725

Tacos 2000, Inc.
c/o Leyza B. Florin, Esq.
Sequor Law
1111 Brickell Avenue
Suite 1250
Miami, FL 33131-3133

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

4te Inc
PO Box 4048,
Mission Viejo, CA, 92690-4048

A & A Ornamental, Inc
18731 SW 87th Ave
Cutler Bay, FL 33157-7224

ADP/MASTER TAX
MasterTax, LLC
111 W. Rio Salado Parkway,
Tempe, AZ 85281-2878

AGP/ALLIANCE GLOBAL PARTNERS
590 MADISON AVE,
NEW YORK, NY 10022-2524

ALLIED SPORTS LLC
PO BOX 845785
BOSTON, MA, 02284-5785

AMWINS GROUP BENEFITS
PO BOX 71051,
CHARLOTTE, NC, 28272-1051

ANKURA
201 E WASHINGTON ST, SUITE 1700,
PHOENIX, AZ 85004-2245

ARRAY
624 S AUSTIN AVE,
SUITE 230,
GEORGETOWN, TX, 78626-5758

ARTHUR J GALLAGHER RK MGMT SRV
PO BOX 532143,
ATLANTA, GA 30353-2143

AT&T
PO Box 6463,
Carol Stream, IL, 60197-6463

Alpha Capital Anstalt
c/o LH Financial
510 Madison Avenue
14th Floor
New York, NY 10022-5730

AmWINS Specialty Casualty Solutions
10 S LaSalle St, Suite 1500,
Chicago, IL 60603-1077

American Recruiting & Consulting Group
2200 N Commerce Pkwy, Suite 200,
Weston, FL 33326-3258

AppsFlyer
100 1 ST St, 25th FL,
San Francisco, CA 94105-3082

Arizona Department of Economic Security
PO Box 6028, Mail Drop 5881,
Phoenix, AZ 85005-6028

Arizona Department of Revenue
PO Box 29085,
Phoenix, AZ 85038-9085

Arondight Advisors
120 Wall St,
New York, New York 10005-3904

Asurint
File 2418,
1801 W Olympic Blvd,
Pasadena, CA 91199-0001

Audio Video Cameras Serv Corp
AUDIO VIDEO CAMERA & SERVICES CORP.
3600 W PALM CT, HIALEAH, FL 33012

BAKER TILLY US, LLP
PO Box 511563,
Los Angeles, CA, 90051-8118

BEST OFFICE COFFEE SERVICES
13130 SW 130 TERRACE,
MIAMI, FL 33186-5895

BREX CC
Brex Payments LLC
650 S 500 W., Suite 300,
Salt Lake City, UT 84101-2891

BREX GHOST KITCHEN
650 S 500 W Suite 300
Salt Lake City, UT 84101-2891

BTERREL GROUP
4324 Mapleshade Ln, Suite 103,
Plano, TX 75093-0050

BUSINESS WIRE DEPT 34182
PO BOX 39000,
SAN FRANCISCO, CA 94139-0001

BairesDev LLC
800 W El Camino
Mountain View, CA 94040-2567

BairesDev LLC
c/o Tyler R. Dowdall, Esq.,
Tarter Krinsky & Drogin, LLP,
1925 Century Park East, Suite 400N,
Los Angeles, California 90067-2701

Balanced Management
Registered Agents Inc.
7533 S. Center View CT
Ste R
West Jordan, UT 84084-5526

Balanced Management, LLC
10880 Wilshire Blvd. 19th Floor
Los Angeles, CA 90024-4101

Balanced Management, LLC
1682 Pintail Way
Sarasota, FL 34231-9136

Balanced Management, LLC
26 S. Rio Grande St. #2072
Salt Lake City Utah 84101-1179

Balanced Management, LLC
3017 Bolling Way NE
Atlanta, GA 30305-2205

Balanced Management, LLC
315 E 62 floor 3
New York, NY 10065-7767

Balanced Management, LLC
441 Lexington Ave
18th Floor
New York, NY 10017-3924

Berkowitz Pollack Brant Advisors CPA
PO Box 735244,
Dallas, TX, 75373-5244

Bright Labs Services LLC
485 Lexington Ave 10th FL,
New York, NY, 10017-2619

(p)BROADRIDGE FINANCIAL SOLUTIONS
1155 LONG ISLAND AVENUE
EDGEWOOD NY 11717-8309

Broadridge ICS
PO BOX 416423,
BOSTON, MA, 02241-6423

CDW DIRECT
200 N. MILWAUKEE AVE,
VERNON HILLS, IL 60061-1577

CINTAS
PO BOX 631025
CINCINNATI, OH, 45263-1025

CK Administrative Services LLC
777 S Figueroa Street,
Suite 4100
Los Angeles, CA 90017-5841

CT Corporation
PO Box 4349
Carol Stream, IL 60197-4349

CUSIP GLOBAL SERVICES
55 WATERS ST,
NEW YORK, NY 10041-0016

Calabrese Consulting LLC
24 North King Street,
Malverne, NY 11565-1002

California Employment Development Department
3321 Power Inn Road,
Suite 140, #759
Sacramento, CA 95826-3893

California Employment Development Department
PO Box 989061,
West Sacramento, CA 95798-9061

California Employment Development Department
PO Box 997418 Sacramento, CA 95899

Call & Jensen
810 Newport Center Dr
Newport Beach, CA 92660

Call & Jensen
810 Newport Center Dr, Suite 700,
Newport Beach, CA, 92660

Chrstopher A Sebes
5730 Claridon Drive
Naples, FL 34113-8385

Christopher A Sebes
5730 Claridon Drive,
Naples, FL 34113-8385

Cloudflare, Inc
Mail Code: 5267,
PO Box 660367,
Dallas, TX, 75266-0367

DC Office of Tax and Revenue- Compliance Adm
1101 4th Street SW,
Washington, DC 20024-4457

DGA SECURITY
429 WST 53RD STREET
NEW YORK, NY 10019-5791

Discount Edgar
125 Wolf Road, Suite 315,
Albany, NY 12205-1221

Dominion Capital, LLC
341 West 38th Street
Suite 800
New York, NY 10018-9686

Doug Greene
6805 Ingalls Court,
Galena, OH, 43021
ipCapital Group Inc
426 Industrial Ave, Suite 150,
Willston, VT, 05495-4459

Drexel Hamilton, LLC
77 Water ST
New York, NY 10005-4420

EL TORO LLC
552 E MARKET STREET,
LOUISVILLE, KY 40202-7111

ELITE AUDIO VIDEO OF SO FL
12241 SW 185TH ST,
MIAMI, FL 33177-3181

ELITE BUSINESS VENTURES
PO BOX 6510,
PASADENA, CA 91109-6500

ENCORE
EVENT TECHNOL CEASARS PALACE,
8850 W SUNSET RD, 3RD FL,
LAS VEGAS, NV 89148-4897

EQUISOLVE
3500 SW Corporate Pkwy,
Palm City, FL 34990-8185

Eduardo J. Dominguez
5778 Devonshire Blvd.
Miami, FL 33155-4062

Email Outreach Company
651 N Broad St, Suite 206,
Middletown, Delaware 19709-6402

Empire Marketing Ventures LLC
383 Madison Ave,
New York, NY 10017-3217

Employment Development Department
722 Capitol Mall
Sacramento, CA 95814-4703

Enlyte
PO Box 88026,
Chicago, IL 60680-1026

FL POWER HOUSE
2310 NW 102ND PLACE
DORAL, FL 33172-2517

FLORIDA POWER AND LIGHT
21400 Powerline Road
Boca Raton, FL 33433-2312

FLORIDA POWER AND LIGHT FPL
General Mail Facility
Miami, FL 33188-0001

FRANCHIMP LTD
Kristine M Rogalewski-Mayo
18531 N Steet,
Scottsdale, AZ, 85255

First Impulse
18 Goodyear, Suite 125,
Irvine, CA 92618-3750

Fisher Phillps LLP
2050 Main St
Irvine, CA 92614-8255

Fisher Phillps LLP
2050 Main St, Suite 1000,
Irvine, CA 92614-8240

Florida Department of Revenue
2450 Shumard Oak Blvd
Tallahassee, FL 32399-7022

Florida Department of Revenue
5050 West Tennessee Street,
Tallahassee, FL 32399-0100

Florida Department of Revenue
Miami Service Center
3750 NW 87th Avenue, Suite 300,
Doral, FL 33178-2430

GITLAB INC
PO BOX 8244,
PASADENA, CA, 91109-8244

GUMMICUBE, INC
50 E ST JOHN ST,
SAN JOSE, CA 95112-5596

GUROCK
0801 N Mopac Expressway,
Building 1, Suite 100,
Austin, TX, 78759

Gallagher Bassett
Services, Inc
15763 Collections
Center Drive,
Chicago, IL 60693-0001

Gentry Partnership In
11523 Palmbrush Trail, Suite 193,
Lakewood Ranch, FL 34202-2917

Gentry Partnership, Inc
11523 Palmbrush Trail
Bradenton, FL 34202-2917

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, 20th Fl,
San Francisco, CA 94111-3367

Grasso Global Inc
Levinson Arshonsky Kurtz & Komsky LLP
15303 Ventura Blvd, Suite 1650,
Sherman Oaks, CA 91403-6620

HEISE SUAREZ MELVILLE, P.A.
2990 Ponce de Leon Blvd, Suite 300,
Coral Gables, FL 33134-6803

HUB International Insurance Services Inc
16030 Venture Blvd,
Suite 500,
Encino, CA 91436-2766

Huggins Actuarial Services Inc
111 Veterans Square, Third Floor,
Media, PA 19063-3292

ICR LLC
761 Main Ave
Norwalk, CT 06851-1080

INTRADO DIGITAL MEDIA, LLC
C/O INTRADO CORPORATION,
PO BOX 74007143,
CHICAGO, IL, 60674-7143

IOWA Workforce Development Unemployment Insu
1000 E Grand Avenue,
Des Moines, IA 50319-0220

IPFS Corporation
3522 Thomasville Rd
Tallahassee, FL 32309-3488

IPFS Corporation
3522 Thomasville Rd,
Suite 400,
Tallahassee, FL 32309-3488

IPFS Corporation 3522
Thomasville Rd
Tallahassee, FL 32309

IRS
Worland, WY 82401

Idaho Department of Labor- Collection Enforc
Unit 317 W Main Street,
Boise, ID 83735-0001

Idaho State Tax Commission
11321 W Chinden Blvd,
Boise ID 83714-1021

Idaho State Tax Commission
PO Box 36,
Boise, ID 83722-0036

Illinois Department of Employment Security
Revenue Collection Enforcement Unit
33 S State Street, 10th Floor,
Chicago, IL 60603-2808

(p)ILLINOIS DEPARTMENT OF REVENUE
BANKRUPTCY UNIT
PO BOX 19035
SPRINGFIELD IL 62794-9035

Innovative Coverage Concepts LLC
c/o Arthur J Gallagher & Co,
200 Jefferson Park,
Ste 110 - 200,
Whippany, NJ 07981-1076

IntacctDept 3237,
PO Box 123237,
Dallas, TX, 75312-3237

Internal Revenue Service
Centralized Insolvency Operation
PO Box 7317
Philadelphia, PA 19101-7317

Internal Revenue Service Centralized Insolve
PO Box 7317
Philadelphia, PA 19101-7317

J David Tax Law LLC
7077 Bonneval Road, Suite 200,
Jacksonville, FL 32216-6073

JOBOT, LLC
18575 JAMBOREE RD, SUITE 600,
IRVINE, CA 92612-2554

Judith Simpson
1939 Festival Court
Joliet, IL 60435

KARLINSKY LLC
103 Mountain Rd
Cornwall On Hudson, NY 12520-1802

KPA SERVICES LL
PO Box 83301,
Woburn, MA, 01813-3301

Kansas Department of Revenue
Division of Taxation
12 SE 10th Avenue,
Topeka KS 66625-0001

Kansas Department of RevenueDivision of Taxa
PO Box 3506, Avenue,
Topeka, KS 66601-3506

Kenneth Weaver
901 Riverside Drive
Old Hickory, TN 37138-3150

Klein & Wilson
4770 Von Karman,
Newport Beach, CA 92660-2123

LANIER PARKING
647 BRICKELL KEY DR, SUITE 1,
MIAMI, FL 33131-2622

LEAPROS WORKFORCE SOLUTIONS
PO BOX 432,
HUNTINGTON BEACH, CA 92648-0432

LOEB & LOEB LLP
345 PARK AVE,
NEW YORK, NY 10154-1895

Lamb McErlane PC
24 E. Market St, PO Box 565,
West Chester, PA 19381-0565

Launay Patrice, PEJ CONSULTING
1560 Sawgrass Corporate Pkwy,
4th FL Suite 423-C,
Sunrise, FL 33323-2858

Lemke Mediation
515 S Flower St, Suite 1800,
Los Angeles, CA 90071-2231

LexisNexis
28544 Network Place,
Chicago, IL, 60673-1285

Lowenstein Sandler LLP
Attn: William B. Farrell
One Lowenstein Drive
Roseland, NJ 07068-1791

Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068-1791

Lowenstein Sandler LLP
One Lowenstein Drive,
Roseland, New Jersey 07068-1791

Lydecker LLP
1221 Brickell Ave, 19th FL,
Miami, FL 33131-3240

MEF I, LP
40 Wall Street
New York, NY 10005-1304

MELTWATER NEWS U
Dept LA 23721,
Pasadena, CA, 91185-3721

MILNER - USAGE
PO BOX 923197,
NORCROSS, GA, 30010-3197

MILNER INC
PO BOX 105743
ATANTA, GA, 30348-5743

MILNER INC - BRICKELL
PO BOX 41602,
PHILADELPHIA, PA, 19101-1602

MINERAL INC
6701 Koll Center Parkway, Suite 430,
PLEASANTON, CA 94566-8065

MINTZ
666 Third Avenue
New York, NY 10017-4011

MINTZ
Chrysler Center,
666 Third Avenue,
New York, NY 10017-4011

Marcum & Kliegman LLP
750 Third Ave
New York, NY 10017-2703

Marcum & Kliegman LLP
750 Third Ave 11th FL,
New York 10017-2716

Mark , Your Extended Office
No. 128 SRP Koil Street South,
Jawahar Nagar, Chennai, 600 082, India

Marlins Baseball
501 Marlins Way,
Miami, FL 33125-1121

Marquis Aurbach Chtd
10001 Park Run Drive,
Las Vegas, NV 89145-8857

Martin Scott
19180 Skyridge Circle,
Boca Raton, FL 33498-6212

Massachusetts Department of Revenue
100 Cambridge Street,
Boston, MA 02204-0001

Meadows Collier Attorney At Law
901 Main Street, Suite 3700,
Dallas, TX 75202-3742

Media Network Consultants LLC
13245 Lower Harden Ave
Orlando, FL 32827-7221

(p)MEDIANT COMMUNICATIONS  INC
ATTN ATTN JOSEPH SIMONOWICH
400 REGENCY FOREST DRIVE
SUITE 200
CARY NC 27518-7703

MetLife Group Benefits
PO Box 804466,
Kansas City, MO,
64180-4466

Miami-Dade Office of the Tax Collector
Tangible Personal Property
200 NW 2nd Avenue, Miami, FL 33128

Michigan Department of Treasury
City Tax Administration
P.O. Box 30756
Lansing, MI 48909-8256

Michigan Department of Treasury
PO Box 30756,
Lansing, MI 48909-8256

Minesota Deptment of Revenue
Collection Division
PO Box 64651,
Saint Paul, MN 55164-0651

Missouri Department of Revenue
Taxation Division
PO Box 3375,
Jefferson City, MO 65102-3375

Morris, Nichols, Arsht & Tunnell LLP
1201 N Market St, 16th FL, PO Box 1347,
Wilmington, DE, 19899-1347

NASDAQ
51 West 42nd Street, Floors 26, 27, 28,
New York, NY 10036

NATPAY
3415 W Cypress St,
Tampa, FL 33607-5007

NOW CFO NEWPORT BEACH
5251 S Green Street,
Suite 350,
Murray, UT, 84123

Nasdaq Corporate
Solutions, LLC
PO Box 780700,
Philadelphia, PA,
19178-0700

National Payment Corporation
3415 W Cypress Street
Tampa, FL 33607-5007

Navarro Hernandez P
66 W Flagler St 6th FL,
Miami, FL 33130-1884

New Benefits
Alexandra Gonzalez Zabala
Judith Simpson
1839 Festival Court,
Joliet, IL 60435-3785

New Jersey Department of Labor and Workforce
Delinquency Unit
PO Box 932,
Trenton, NJ 08625-0932

New Jersey Department of Labor and Workforce
Division of Employer Accounts
PO Box 059,
Trenton, NJ 08646-0001

New Jersey Department of the Treasury
Division of Taxation
PO Box 1009,
Moorsetown, NJ 08057-0909

New Mexico Department of Workforce Solutions
PO Box 1928,
Albuquerque, NM 87103-1928

New Mexico Taxation & Revenue
PO Box 25128,
Santa Fe, NM 87504-5128

New York Department of Labor- Unemployment I
Enforcement Unit
PO Box 4305
Binghamton, NY 13902-4305

New York Department of Labor- Unemployment I
PO Box 15012
Albany, NY 12212-5012

New York Department of Labor- Unemployment I
PO Box 4301
Brimingham, NY 13902-4301

New York Department of Taxation and Finance
Civil Enforecement Division - Offset Uni
Albany NY 12227-0001

New York Employment Contributions and Taxes
PO Box 4119
Binghamton, NY 13902-4119

New York State Department of Taxation & Fina
Bankruptcy Section
P O Box 5300
Albany, NY 12205-0300

Norman S Gerstein PA
5966 S. Dixie Highway, Suite 300,
Miami, FL 33143-5177

(p)OKTA INC
100 FIRST STREET
SUITE 600
SAN FRANCISCO CA 94105-3513

OSBORN MALEDO
2929 N CENTRAL AVE, 21 FLOOR,
PHOENIX, AZ 85012-2782

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Okin Pest Control
2170 Piedmont Rd NE
Atlanta, GA, 30324-4135

Oklahoma Tax Commission
Oklahoma City, OK 73194-0001

Oppenheim Insurance Broker Inc.
23742 Lyons Ave,
PO Box 220957,
Newhall, CA 91322-0957

Osborn Maledon
2929 N Central Ave
Phoenix, AZ 85012-2793

Osher Capital Partners, LLC
c/o LH Financial
510 Madison Ave
14th Floor
New York, NY 10022-5730

PETTIT KOHN
11622 EL CAMINO REAL, SUITE 300,
SAN DIEGO, CA 92130-2051

Payne & Fears LLP
4 Park Plaza
Irvine, CA 92614-8550

Payne & Fears LLP
4 Park Plaza, Suite 1100,
Irvine, CA 92614-8550

Pennsylvania Department of Labor & Industry
Office of Unemployment Compensation Tax
651 Boas Street, Room 915,
Harrisburg, PA 17121-0751

Philadelphia Ins Co
PO BOX 70251,
PHILADELPHIA, PA, 19176-0251

Pitney Bowes
PO Box 371874,
Pittsburgh, PA, 15250-7874

Plant Care
PO Box 50115,
Lighthouse Point, FL 33074-0115

Premier Produce
2672 SW 36th St
Dania Beach, FL 33312-5005

Prequin Limited
1st Floor, Verde, 10 Bressenden Place,
London, United Kingdom,
SW1E 5DH, United Kingdom

PrismHR
PO BOX 844768,
Boston, MA 02284-4759

Professional Window Tinters
7385 Bird Rd (40th St)
Miami, FL, 33155

QB Animation Inc
320 Lighthouse Drive,
Palm Beach Gardens, FL 33410-4835

RB INTERNATIONAL
SUPPLY CORP
7265 NW 44TH ST
MIAMI, FL 33166-6418

RUNWAY 1 LLC
250 Greenpoint Ave,
Brooklyn, NY 11222-2493

Restaurant Finance Monitor
2808 Anthony Lane South,
Minneapolis, MN 55418-3234

Richard DeBeikes
23241 Ventura Blvd Ste 224C,
Woodland Hills, CA 91364-1042

Rose, Snyder & Jacobs LLP
15821 Ventura Blvd
Encino, CA 91436-4778

Rose, Snyder & Jacobs LLP
15821 Ventura Blvd, Suite 490,
Encino, CA 91436-4778

Roxborough Pomerance NYE & Adreani
5820 Canoga Ave
Woodland Hills, CA 91367-6549

Roxborough Pomerance NYE & Adreani
5820 Canoga Ave, Suite 250,
Woodland Hills, CA 91367-6549

SICHENZIA ROSS FERENCE LLP
1185 AVE OF THE AMERICAS,
31ST FLOOR,
NEW YORK, NY 10036-2612

STERICYCLE
28883 NETWORK PLACE,
CHICAGO, IL, 60673-1288

SUNZ INSURANCE
1301 6th Ave W,
Bradenton, FL 34205-7410

Say Technologies LLC
85 Willow Road
Menlo Park, CA 94025-3656

SearchGeeks
701 Palomar Airport Rd. #170,
Carlsbad CA 92011-1045

Securities and Exchange Commission
100 F Street, NE,
Washington, DC 20549-2001

Securities and Exchange Commission
801 Brickell Avenue
Suite 1950
Miami, FL 33131-4901

Slavic 401K
1075 Broken Sound Pkwy NW, Suite 100,
Boca Raton, FL, 33487-3540

Slavic Integrated Administration
1075 NW Brkn Snd Pkway, Ste 100,
Boca Raton, FL,
33487-3540

SolutionCore Inc
9742 Hibiscus Drive,
Garden Grove, CA 92841-1717

Specialty Marketing Consulting Inc
c/o Kimberly Peters,
PO Box 6700,
Pine Mountain Club, CA 93222-6700

Sperling & Slater PC
55 West Monroe Street, Suite 3200,
Chicago, IL 60603-5035

Sportslternship, LLC
23 Rancho Circle,
Lake Forest, CA 92630-8324

Sportslternship, LLC
23 Rancho Circle
Lake Forest, CA 92630-8324

Staff Benefits
Management, Inc
2307 FENTON PARKWAY #107-126,
San Diego, CA 92108-4746

Stifel Financial
510 N. Broadway
Saint Louis, MO 63102

SullivanCurtisMonroe Ins Serv LLC
1920 Main St, Suite 600,
Irvine, CA 92614-7226

TEKWORKS
13000 Gregg Street,
Poway, CA 92064-7151

TENNESSE DEPT OF REVENUE
500 DEADERICK ST, ANDREW JACKSON ST OFFI
NASHVILLE, TN 37242-0001

TMF SERVICES HONDURAS
Colonia Lomas del Guijarro Sur,
Domicilio Alquilado, Contiguoa Plaza Fic
5to Nivel. Tegucigalpa M.D.C. Honduras

TRUSAIC
3530 WILSIRE BLVD, SUITE 1460,
LOS ANGELES, CA 90010-2334

Tennessee Department of Labor & Workforce De
Employment Security Division,
Employer Accounts Audit
220 French Landing Drive,
Nashville, TN 37243-1002

Toppan Merrill LLC
PO BOX 74007295,
CHICAGO, IL 60674-7295

Traliant Operating LLC
PO Box 844090,
Boston, MA 02284-4090

Trenan Law
PO Box 1102,
Tampa, FL, 33601-1102

UNITED HEALTHCARE
PO BOX 111111,
NEW TOWN, MO, 93195-9782

US FOODS
PO BOX 281838
BOCA RATON, FL, 30384-1838

VERIFONE INC
c/o Colliers Int'l Lease Admin,
301 University Ave, Ste 100,
Sacramento, CA 95825-5537

VERITEXT, LLC
PO BOX 71303,
CHICAGO, IL, 60694-1303

VIA Design Studio
103 Westward Drive
Miami, FL 33166-5257

Virginia Department of Taxation
PO Box 1115.
Richmond, VA 23218-1115

Virginia Department of Taxation
PO Box 1777,
Richmond, VA 23218-1777

WASTE MANAGEMENT INC FL
8801 NW 91ST STREET,
MEDLEY, FL 33178-1815

WHITE & CASE
SE FINANICAL CTR STE 4900,
200 S BISCAYNE BLVD,
MIAMI, FL, 33131-2352


WORKIVA
2900 UNIVERSITY BLVD,
AMES, IA 50010-8665

White & Case
SE Financial Ctr Ste
4900 Miami, FL 33131

Whitney White
100 Albert Way 08540-3202


Whitney White
100 Albert Way, Apt 1417,
Princeton, NJ 08540-3215

Widgets & Web LLC
19500 194th Trl,
Golden Beach, FL, 33160

eFax Corporate
C/O J2 Cloud Services LLC,
PO BOX 51873,
LOS ANGELES, CA, 90051-6173


nFusion Capital Finance LLC
6444 Burnet Rd Unit 100,
Austin, TX 78757-3252

Daniel Gielchinsky
2875 NE 191st Street
Suite 705
Aventura, FL 33180-2803

Eric Rubin
Moecker Auctions Inc
1885 Marina Mile Blvd #103
Ft. Lauderdale, FL 33315-2243


Isaac M Marcushamer Esq.
DGIM Law, PLLC
2875 NE 191st Street
Suite 705
Aventura, FL 33180-2803

Jonathan Feldman
2 South Biscayne Boulevard, Suite 1600
Miami, FL 33131-1824

Manny Rivera
c/o Shraiberg Page P.A.
2385 NW Executive Center Dr., #300
Boca Raton, FL 33431-8530


Mark Absher
c/o Shraiberg Page P.A.
2385 NW Executive Center Dr., #300
Boca Raton, FL 33431-8530

Robert Angueira
c/o Paul Steven Singerman
Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131-5319

Scott Absher
c/o Shraiberg Page P.A.
2385 NW Executive Center Dr., #300
Boca Raton, FL 33431-8530


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


United States of America Internal Revenue Se
c/o Raychelle A. Tasher
99 NE 4 St. # 300
Miami, FL 33132

Broadridge Financial Solutions
1155 long Island Avanue
Edgewood, NY 11717

(d)IRS - Department of the Treasury
Ogen, UT 84201


Illinois Department of Revenue
PO Box 19006,
Springfield, IL 62794

Mediant
Communications Inc.
PO BOX 29976,
NEW YORK, NY, 10087-9976

(d)Mediant Communications Inc.
400 Regency Forest Drive
Suite 200
Cary, NC 27518


OKTA INC
100 FIRST STREET, SUITE 600,
SAN FRANCISCO, CA, 94105

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Sunz Insurance Solutions, LLC

(u)Miami

(d)A & A Ornamental, Inc
18731 SW 87th Ave,
Cutler Bay, FL 33157-7224

(d)ALLIED SPORTS LLC
PO BOX 845785,
BOSTON, MA, 02284-5785

(d)CINTAS
PO BOX 631025,
CINCINNATI, OH, 45263-1025

(d)CK Administrative Services LLC
777 S Figueroa Street, Suite 4100,
Los Angeles, CA 90017-5841

(d)CT Corporation
PO Box 4349,
Carol Stream, IL,
60197-4349

(d)DGA SECURITY
429 WST 53RD STREET,
NEW YORK, NY 10019-5791

(d)FL POWER HOUSE
2310 NW 102ND PLACE,
DORAL, FL 33172-2517

(d)ICR LLC
761 Main Ave,
Norwalk, CT 06851-1080

(d)KARLINSKY LLC
103 Mountain Road,
Cornwall-On-Hudson, NY 12520-1802

(d)Kenneth Weaver
901 Riverside Drive,
Old Hickory, TN 37138-3150

(d)MILNER INC
PO BOX 105743,
ATANTA, GA, 30348-5743

(d)MILNER INC BRICKELL
PO BOX 41602
PHILADELPHIA, PA, 19101-1602

(d)MILNER USAGE
PO BOX 923197
NORCROSS, GA, 30010-3197

(d)Media Network Consultants LLC
13245 Lower Harden Ave,
Orlando, FL 32827-7221

(d)Premier Produce
2672 SW 36th St,
Dania Beach, FL 33312-5005

(d)Professional Window Tinters
7385 Bird Rd (40th St),
Miami, FL, 33155

(d)RB INTERNATIONAL SUPPLY CORP
7265 NW 44TH ST,
MIAMI, FL 33166-6418

(d)Securities and Exchange Commission
100 F. Street NE
Washington, DC 20549-2001

(d)Sunz Insurance
1301 6th Ave W
Bradenton, FL 34205-7410

(d)US FOODS
PO BOX 281838,
BOCA RATON, FL, 30384-1838

(d)VIA Design Studio
103 Westward Drive,
Miami, FL 33166-5257

(d)WORKIVA
2900 University Blvd
Ames, IA 50010-8665

(d)White & Case
SE Financial Ctr Ste 4900
Miami, FL 33131

(d)Whitney White
100 Albert Way 08540

(u)Richelle Kalnit
Hillco IP Services LLC

```
End of Label Matrix
Mailable recipients    257
Bypassed recipients     27
Total                  284
```

# EXHIBIT A

**ASSET PURCHASE AGREEMENT**

**by and between**

**SHIFTPIXY, INC., SHIFTPIXY STAFFING, INC. AND RETHINK HUMAN CAPITAL MANGEMENT, INC.**

**and**

**G3 BUSINESS SERVICES LLC**

**dated as of**

**December 10, 2024**

## **TABLE OF CONTENTS**

ARTICLE I PURCHASE AND SALE ...................................................................................... 1
    1.1      Purchase and Sale of the Transferred Assets ................................................. 1
    1.2      Excluded Assets .............................................................................................. 2
    1.3      Assumption of Certain Liabilities ................................................................... 2
    1.4      Excluded Liabilities ........................................................................................ 2
    1.5      Assumption/Rejection of Certain Contracts ................................................... 2

ARTICLE II BANKRUPTCY COURT APPROVAL AND OTHER MATTERS ................... 3
    2.1      Sale Process ..................................................................................................... 3
    2.2      Bankruptcy Court Matters ............................................................................... 3
    2.3      Entry of Order Approving Sale ....................................................................... 3

ARTICLE III INSTRUMENTS OF TRANSFER AND ASSUMPTION ............................... 4

ARTICLE IV CONSIDERATION; ALLOCATION ............................................................... 4
    4.1      Consideration; Payment .................................................................................. 4
    4.2      Deposit ............................................................................................................ 5
    4.3      Withholding .................................................................................................... 5
    4.4      Allocation ....................................................................................................... 5

ARTICLE V CLOSING ........................................................................................................... 6

ARTICLE VI REPRESENTATIONS AND WARRANTIES OF SELLERS ......................... 6
    6.1      Organization, Qualification and Authority ..................................................... 6
    6.2      Authorization, Execution and Delivery of Agreement and Transaction
              Documents ....................................................................................................... 6
    6.3      Title to Assets ................................................................................................. 6
    6.4      Legal Proceedings ........................................................................................... 6
    6.5      Brokers ............................................................................................................ 7

ARTICLE VII REPRESENTATIONS AND WARRANTIES OF BUYER ........................... 7
    7.1      Organization, Qualification and Authority ..................................................... 7
    7.2      Authorization, Execution and Delivery of Agreement and Transaction
              Documents ....................................................................................................... 7
    7.3      Brokers ............................................................................................................ 7
    7.4      No Violation of Laws or Agreements .............................................................. 7

ARTICLE VIII COVENANTS AND AGREEMENTS ........................................................... 7
    8.1      Conduct of Business ....................................................................................... 7
    8.2      Notification of Certain Matters ....................................................................... 8
    8.3      Access to Information ...................................................................................... 8
    8.4      Public Announcement ..................................................................................... 8
    8.5      Taxes .............................................................................................................. 9
    8.6      Further Assurances; Post-Closing Access ...................................................... 9
    8.7      Confidentiality ................................................................................................ 9
    8.8      No Survival of Representations and Warranties .............................................. 10

8.9    Change of Name ............................................................................................. 10

ARTICLE IX CONDITIONS PRECEDENT TO BUYER'S OBLIGATION TO CLOSE ...................... 10
9.1    Accuracy of Representations and Warranties; Performance of this Agreement .............. 10
9.2    Officer's Certificate ......................................................................................... 10
9.3    Transfer, Assignment and Assumption Documents........................................... 10
9.4    Data Room ..................................................................................................... 10
9.5    Bankruptcy Matters.......................................................................................... 10
9.6    Winning Bidder................................................................................................ 10
9.7    Required Consents ........................................................................................... 11
9.8    Release of Deposit ........................................................................................... 11

ARTICLE X CONDITIONS PRECEDENT TO SELLERS' OBLIGATION TO CLOSE ...................... 11
10.1    Accuracy of Representations and Warranties; Performance of this Agreement .............. 11
10.2    Officer's Certificate ......................................................................................... 11
10.3    Transfer, Assignment and Assumption Documents........................................... 11
10.4    Bankruptcy Matters.......................................................................................... 11
10.5    Winning Bidder................................................................................................ 11
10.6    Release of Deposit. .......................................................................................... 11

ARTICLE XI TERMINATION.................................................................................................. 11
11.1    Breaches and Defaults; Opportunity to Cure ...................................................... 11
11.2    Termination .................................................................................................... 12

ARTICLE XII MISCELLANEOUS ............................................................................................ 12
12.1    Notices ........................................................................................................... 12
12.2    Expenses ......................................................................................................... 13
12.3    Governing Law ................................................................................................ 13
12.4    Assignment ..................................................................................................... 13
12.5    Successors and Assigns .................................................................................... 14
12.6    Amendments; Waivers...................................................................................... 14
12.7    Entire Agreement ............................................................................................ 14
12.8    Counterparts .................................................................................................... 14
12.9    Severability ..................................................................................................... 14
12.10    Section Headings; Interpretation....................................................................... 14
12.11    Third Parties .................................................................................................... 14
12.12    Specific Performance ....................................................................................... 14
12.13    Exhibits ........................................................................................................... 15
12.14    Definitions ...................................................................................................... 15

# ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "<u>Agreement</u>") is made and entered into as of December 8, 2024, by and between G3 Business Services LLC, a New Jersey limited liability company ("<u>Buyer</u>"), and Shiftpixy, Inc., Shiftpixy Staffing, Inc. and ReThink Human Capital Management, Inc. (each a "<u>Seller</u>" and, collectively, "<u>Sellers</u>"). Capitalized terms used but not defined in the context in which they are used shall have the respective meanings assigned to such terms in <u>Section 12.13</u>.

**WHEREAS**, on October 28, 2024 (the "<u>Petition Date</u>"), each Seller filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, <u>et seq.</u> (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Florida (the "<u>Bankruptcy Court</u>" and the cases arising under each such petition, collectively, the "<u>Bankruptcy Cases</u>");

**WHEREAS**, the Sellers are debtors-in-possession and no trustee has been appointed in the Bankruptcy Cases.

**WHEREAS**, Sellers desire to sell, transfer, convey, assign and deliver to Buyer, in accordance with Sections 363 and 365 and the other applicable provisions of the Bankruptcy Code, all of the Transferred Assets, free and clear of all Liens, together with the Assumed Liabilities of Sellers, upon the terms and subject to the conditions set forth in the Agreement (collectively with the transactions contemplated by this Agreement and the other Transaction Documents, the "<u>Transaction</u>");

**WHEREAS**, Buyer wishes to purchase and take delivery of the Transferred Assets and assume the Assumed Liabilities upon such terms and subject to such conditions;

**WHEREAS**, the Transferred Assets will be sold pursuant to the Sale Order under Sections 363 and 365 of the Bankruptcy Code;

**WHEREAS**, certain of the obligations of Sellers under this Agreement are conditioned upon the approval of the Bankruptcy Court in accordance with <u>Article II</u>; and

**WHEREAS**, the board of directors (or similar governing body) of each Seller has determined that it is advisable and in the best interests of such Seller and its constituencies to enter into this Agreement and to consummate the Transactions provided for herein, subject to entry of the Sale Order, and each has approved the same.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual covenants, representations, warranties and agreements set forth in this Agreement, and intending to be legally bound hereby, the parties hereto agree as follows:

## ARTICLE I
## PURCHASE AND SALE

1.1     <u>Purchase and Sale of the Transferred Assets</u>. Pursuant to sections 363 and 365 of the Bankruptcy Code, on the terms and subject to the conditions set forth herein and in the Sale Order, at the Closing, Sellers shall sell, transfer, assign, convey, and deliver to Buyer, and Buyer shall purchase, acquire, and accept from Sellers, all of Sellers' right, title, and interest as of the Closing in and to the Transferred Assets, free and clear of all Liens other than Permitted Liens. "<u>Transferred Assets</u>" means all of the assets that are set forth on <u>Schedule 1.1</u> (including sub-Schedules A - H), including all goodwill associated with the Transferred Assets, but excluding, the Excluded Assets.

1.2     <u>Excluded Assets</u>. Notwithstanding anything to the contrary in this Agreement, in no event shall Sellers be deemed to sell, transfer, assign, convey, or deliver, and Sellers shall retain all right, title, and interest to, in and under all assets, properties, interests, and rights of each such Seller, that are not Transferred Assets (collectively, the "<u>Excluded Assets</u>").

1.3     <u>Assumption of Certain Liabilities</u>. On the terms and subject to the conditions set forth herein and in the Sale Order, effective as of the Closing, in addition to the payment of the Cash Payment in accordance with <u>Section 12.4</u>, Buyer shall irrevocably assume from Sellers (and, from and after the Closing, pay, perform, discharge, or otherwise satisfy in accordance with their respective terms), and Sellers shall irrevocably convey, transfer, and assign to Buyer, only the following Liabilities, without duplication and only to the extent not paid, performed, discharged, or otherwise satisfied prior to the Closing (collectively, the "<u>Assumed Liabilities</u>"):

(a)     all Liabilities and obligations of Sellers arising out of or relating to the Assigned Contracts;

(b)     any Liabilities and obligations related to the Transferred Assets for the post-Closing period; and

(c)     payment of all Cure Costs.

1.4     <u>Excluded Liabilities</u>. Buyer shall not assume, be obligated to pay, perform, or otherwise discharge any Liabilities that are not Assumed Liabilities (the "<u>Excluded Liabilities</u>").

1.5     <u>Assumption/Rejection of Certain Contracts</u>.

(a)     <u>Assumption and Assignment of Executory Contracts</u>. Sellers shall provide timely and proper written notice to all parties to any executory Contracts or unexpired leases to which any Seller is a party that are Assigned Contracts in accordance with the Bidding Procedures Order and take all other actions reasonably necessary to cause such Contracts to be assumed by Sellers and assigned to Buyer pursuant to section 365 of the Bankruptcy Code. The Sale Order shall provide that, as of and conditioned on the occurrence of the Closing, Sellers shall assign to Buyer the Assigned Contracts, which assumption shall be effectuated in accordance with the Bidding Procedures Order. The notice of assumption to be filed and served in accordance with the Bidding Procedures Order shall, among other things, set forth Sellers' good faith estimate of the amounts necessary to cure any defaults under each of the Assigned Contracts as determined by Sellers based on Sellers' books and records or as otherwise determined by the Bankruptcy Court ("<u>Cure Costs</u>"). At the Closing, Sellers shall, pursuant to the Sale Order, Bidding Procedures Order, and the Assignment and Assumption Agreement, assume and assign to Buyer (the consideration for which is included in the Purchase Price), all Assigned Contracts pursuant to sections 363 and 365 of the Bankruptcy Code. At the Closing, Buyer shall (i) pay all Cure Costs required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts and (ii) assume, and thereafter in due course and in accordance with its respective terms pay, fully satisfy, discharge and perform all of the obligations under each Assigned Contract pursuant to section 365 of the Bankruptcy Code.

(b)     <u>Non-Assignment</u>. Buyer acknowledges that the Sale Order will authorize the assumption and assignment of the Assumed Contracts without the requirement of any consent by the parties thereto. To the extent any Assumed Contract is not assumable and assignable by Sellers to Buyer under Section 365 of the Bankruptcy Code without the consent of the applicable counterparty thereto, Sellers shall use their reasonable best efforts prior to Closing to obtain all such required consents of third parties that are necessary for the consummation of the Transactions contemplated hereby (the "<u>Required Consents</u>"). All

2

such Required Consents shall be in writing, in form and substance reasonably acceptable to Buyer, and executed counterparts thereof shall be delivered to Buyer on or before five (5) days prior to the Closing Date. If a Required Consent is not obtained, or if an attempted assignment thereof would be ineffective or would affect the rights thereunder so that Buyer would not receive all such rights, and Buyer elects to waive such Required Consent as a condition to Closing or otherwise proceeds with the Closing, Sellers shall continue to use their reasonable best efforts (at Buyer's expense) to obtain such Required Consents following the Closing and, until obtained, use their reasonable best efforts after Closing to provide to Buyer the benefits under any such Assumed Contract or any claim or right, including, without limitation, enforcement for the benefit of Buyer of any and all rights of Sellers against a third party thereto arising out of the default or cancellation by such third party or otherwise.

## ARTICLE II
## BANKRUPTCY COURT APPROVAL AND OTHER MATTERS

2.1    Sale Process. From the date hereof (and any prior time) and until the transactions contemplated hereby are consummated, Sellers are permitted to and to cause its representatives and Affiliates to initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by any Person (in addition to Buyer and its Affiliates and representatives) in connection with submitting any Qualified Bid in accordance with the Bidding Procedures Order. In addition, Sellers shall have the authority to respond to any inquiries or offers with respect to a Qualified Bid and perform any and all other acts related thereto to the extent any such act is not in violation of the Bidding Procedures Order or the Bankruptcy Code. This Agreement is subject to approval by the Bankruptcy Court and the consideration by Seller of higher or better competing bids in respect of the Transferred Assets, as determined in Seller's sole and exclusive discretion in accordance with the Bidding Procedures Order.

2.2    Bankruptcy Court Matters.

(a)    Sale Motion. On November 18, 2024, Sellers filed the Sale Motion. Sellers shall not alter, modify, or withdraw the Sale Motion without the prior consent of Buyer in its sole and absolute discretion.

(b)    This Agreement. On or before December 12, 2024, Sellers shall file this Agreement with the Bankruptcy Court and provide all required notice of this Agreement.

2.3    Entry of Order Approving Sale.

(a)    If this Agreement and the sale of the Transferred Assets to Buyer on the terms and conditions hereof are determined to be the "highest or otherwise best offer" in accordance with the Bidding Procedures Order, the Sale Order shall be in accordance with the terms of this Agreement, and shall, among other things:

(i)    approve this Agreement (as may be amended following an Auction, if one is held and Buyer presents the Successful Bid) and the execution, delivery, and performance by Sellers of this Agreement and the other instruments and agreements contemplated hereby;

(ii)    approve and direct the sale and transfer of the Transferred Assets to Buyer and approve and direct the assumption and assignment of the Assumed Contracts to Buyer free and clear of all Liens, Claims or interests, based on appropriate findings and rulings pursuant to, *inter alia*, Sections 363(b), 363(f), 363(m) and 365 of the Bankruptcy Code, including but not limited to Sections 365(h), 365(i), 365(l) and 365(n) of the Bankruptcy Code and the release of Buyer of any rights otherwise associated with, and which may otherwise be to the benefit of, any third parties;

(iii)     include a finding that Buyer is a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code;

(iv)     include a finding that Buyer is not deemed to be a successor to Sellers, to have, de facto or otherwise, merged with or into Sellers or to be a mere continuation of Sellers;

(v)     include a finding that the Consideration is a fair and reasonable price for the Transferred Assets;

(vi)     include a finding that Buyer will not have any derivative, successor, transferee or vicarious Liability for Liabilities of any Seller or any Affiliates of any Seller by reason of any theory of Law or equity (whether under federal or state Law or otherwise) as a result of the transactions contemplated by this Agreement, including but not limited to any Liabilities on account of Transfer Taxes, except as expressly assumed by Buyer in this Agreement;

(vii)     include a finding that, to the maximum extent permitted by the Bankruptcy Code, the so-called "bulk sales," "bulk transfer" or similar Laws in any applicable jurisdictions do not apply;

(viii)     include a finding confirming the adequacy of notice to all creditors and parties in interest and parties to any executory contract, unexpired Lease or right of entry; and

(ix)     include provisions for the retention of jurisdiction in the Bankruptcy Court over matters relating to the transactions contemplated in this Agreement including matters relating to title to the Transferred Assets and claims against the Transferred Assets which arose or were based on facts or occurrences prior to the Closing. Furthermore, the Sale Order shall not have been reversed, stayed, modified or amended.

(b)     Sellers shall provide notice of the Sale Hearing and any other matter before the Bankruptcy Court relating to this Agreement or the Transaction Documents, in each case as required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, any applicable local rules of bankruptcy procedure or as otherwise ordered by the Bankruptcy Court.

## ARTICLE III
## INSTRUMENTS OF TRANSFER AND ASSUMPTION

At the Closing, Sellers will deliver to Buyer (a) one or more bills of sale as may be reasonably required by Buyer, (b) one or more assignment and assumption agreements as may be reasonably required by Buyer, (c) one or more trademark assignment agreements as may be reasonably required by Buyer, and (d) all such other good and sufficient instruments of sale, transfer and conveyance consistent with the terms and provisions of this Agreement as shall be reasonably necessary to vest in Buyer (or its designee(s)) all of Sellers' right, title and interest in, to and under the Transferred Assets.

## ARTICLE IV
## CONSIDERATION; ALLOCATION

4.1    <u>Consideration; Payment</u>.

(a)     The aggregate consideration (collectively, the "<u>Consideration</u>") to be paid by Buyer for the purchase of the Transferred Assets shall be:

(i)        the assumption of Assumed Liabilities,

(ii)       a cash payment equal to $1,850,000.00 (the "Cash Payment"), and

(iii)      the payment of Cure Costs.

(b)       At the Closing, Buyer shall deliver, or cause to be delivered to Sellers, the Cash Payment less the Deposit (the "Closing Date Payment"). The Closing Date Payment and any payment required to be made pursuant to any other provision hereof shall be made in cash by wire transfer of immediately available funds to such bank account as shall be designated in writing by the applicable Party to (or for the benefit of) whom such payment is to be made at least two (2) Business Days prior to the date such payment is to be made.

4.2       Deposit.

(a)       Buyer has, on or prior to the date hereof, made an earnest money deposit with Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco Streambank") in an amount equal to $185,000.00 (the "Deposit"), by wire transfer of immediately available funds for deposit into a separate account (the "Deposit Account"). The Deposit shall not be subject to any lien, attachment, trustee process, or any other judicial process of any creditor of any of Sellers or Buyer and shall be applied against payment of the Purchase Price on the Closing Date.

(b)       If this Agreement has been terminated by Sellers pursuant to Section 11.1(e) or 11.1(f) (or by Buyer pursuant to Section 11.1(b), 11.1(c), or 11.1(d), in each case in circumstances where Sellers would be entitled to terminate this Agreement pursuant to Section 11.1(e) or 11.1(f)), then Sellers shall retain the Deposit together with all received investment income, if any.

(c)       If this Agreement has been terminated by any Party, other than as contemplated by Section 4.2(b), then the Deposit, together with all received investment income, if any, shall be returned to Buyer within five (5) Business Days after such termination.

(d)       The Parties agree that Sellers' right to retain the Deposit, as set forth in Section 4.2(b), is not a penalty, but rather is liquidated damages in a reasonable amount that will compensate Sellers for their respective efforts and resources expended and the opportunities foregone while negotiating this Agreement and in reliance on this Agreement and on the expectation of the consummation of the transactions contemplated hereby, which amount would otherwise be impossible to calculate with precision.

(e)       If the Closing occurs, the Deposit shall be transferred to Sellers.

4.3       Withholding. Buyer shall not be entitled to deduct and withhold any Taxes from any amounts otherwise payable pursuant to this Agreement.

4.4       Allocation. Within a reasonable time following the Closing, Buyer shall deliver to Sellers a statement allocating the Consideration among the Transferred Assets in accordance with Section 1060 of the Code (the "Allocation Statement"). Sellers and Buyer agree to file their respective IRS Forms 8594 and all federal, state and local Tax Returns in accordance with the Allocation Statement.

## ARTICLE V
## CLOSING

Subject to the terms and conditions hereof, the closing of the transactions contemplated by this Agreement (the "Closing") shall take place virtually (by delivery of executed documents via pdf, DocuSign or other electronic means), no later than the second Business Day following the date on which all conditions to Closing set forth in Article IX and Article X have been satisfied or waived (the date on which the Closing is actually held, the "Closing Date"). If it occurs, the Closing shall be effective as of 12:01 a.m. Eastern time on the Closing Date.

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES OF SELLERS

Sellers represent and warrant to Buyer that the following statements contained in this Article VI are true and correct as of the date hereof and as of the Closing Date:

6.1     Organization, Qualification and Authority. Sellers are entities duly organized, validly existing and in good standing under the Laws of their jurisdiction of formation and under the Laws of each jurisdiction where qualification as a foreign entity is required, except where the lack of such qualification would not, individually or in the aggregate, reasonably be expected to be material. Sellers have all necessary power and authority to own and operate their properties and to carry on their business as is now being conducted in the Bankruptcy Cases. Sellers have the power and authority to execute and deliver and perform their obligations under this Agreement and the other Transaction Documents, and to undertake the transactions contemplated hereby and thereby.

6.2     Authorization, Execution and Delivery of Agreement and Transaction Documents. The execution, delivery, and performance of this Agreement and the other Transaction Documents by Sellers and the transfer or assignment of the Transferred Assets to Buyer have been duly and validly authorized and approved by all necessary corporate or other entity action. This Agreement and each of the Transaction Documents constitute Sellers' legal, valid and binding obligations, enforceable against each Seller (to the extent it is a party thereto) in accordance with their respective terms, subject to Laws of general application relating to the rights of creditors generally and the availability of equitable remedies. Subject to order of the Bankruptcy Court and pursuant thereto, Sellers will have full power, right and authority to sell and convey to Buyer the Transferred Assets.

6.3     Title to Assets. Sellers have good and marketable title to, or a valid leasehold interest in, all of the properties and assets included in the Transferred Assets. Sellers have the power and right to use, transfer, sell, convey, assign and deliver, and shall at Closing transfer, sell convey, assign and deliver to Buyer, each of the Transferred Assets owned by them, free and clear of all Liens. The delivery to Buyer at the Closing of the Transaction Documents, together with the Sale Order, will vest in Buyer good and marketable title to the Transferred Assets, free and clear of all Liens. The delivery to Buyer at the Closing of the Transaction Documents will vest in Buyer a valid, binding and enforceable leasehold interest in, or other valid, binding and enforceable right to possess and use, the Transferred Assets that are not owned by Sellers, in accordance with the Contracts applicable to such Transferred Assets, copies of which Contracts have been provided to Buyer.

6.4     Legal Proceedings. Except as set forth on Schedule 6.4, there is no Legal Proceeding pending or, to the Knowledge of Sellers, threatened in writing against or affecting Sellers or the Transferred Assets (or to the Knowledge of Sellers, pending or threatened, against any of the officers, directors or employees of Sellers with respect to their business activities related to or affecting the Transferred Assets) (a) that challenges or that is reasonably expected to have the effect of preventing, making illegal, delaying

or otherwise interfering with any of the transactions contemplated by this Agreement; or (b) that is related to the Transferred Assets or Assumed Liabilities.

6.5    <u>Brokers</u>. Except for Hilco Streambank, for whom Sellers shall be solely responsible for any fees, commissions or other amounts owing or that may become due and owing, Sellers have not engaged or incurred any Liability to any agent, broker or other Person acting pursuant to the express or implied authority of Sellers which is or may be entitled to a commission or broker or finder's fee in connection with the transactions contemplated by this Agreement or otherwise with respect to the sale of the Transferred Assets.

**ARTICLE VII**
**REPRESENTATIONS AND WARRANTIES OF BUYER**

Buyer represents and warrants to Sellers as follows:

7.1    <u>Organization, Qualification and Authority</u>. Buyer is a limited liability company duly organized, validly existing and in good standing under the Laws of the State of New Jersey. Buyer has all necessary limited liability company power and authority to (a) own and operate its properties, (b) carry on its business as it is now being conducted, and (c) perform its obligations under this Agreement and the other Transaction Documents, and to undertake and carry out the transactions contemplated hereby and thereby.

7.2    <u>Authorization, Execution and Delivery of Agreement and Transaction Documents</u>. All necessary consents and approvals have been obtained by Buyer for the execution and delivery of this Agreement and the Transaction Documents. The execution, delivery and performance of this Agreement and the other Transaction Documents in accordance with their terms by Buyer have been duly and validly authorized and approved by all necessary limited liability company action. Buyer has full limited liability company power, right and authority to acquire the Transferred Assets. This Agreement is, and each of the other Transaction Documents when so executed and delivered will be, a valid and binding obligation of Buyer, enforceable against it in accordance with its terms, except to the extent such enforceability may be limited by bankruptcy, insolvency or other similar Laws affecting creditors.

7.3    <u>Brokers</u>. Buyer has not engaged any agent, broker or other Person acting pursuant to the express or implied authority of Buyer that is or may be entitled to a commission or broker or finder's fee in connection with the transactions contemplated by this Agreement or otherwise with respect to the sale of the Transferred Assets.

7.4    <u>No Violation of Laws or Agreements</u>. The performance by Buyer of its obligations contemplated hereunder and the consummation by Buyer of the transactions contemplated herein will not violate (a) any Laws or any order, writ, injunction, decree, judgment, award, consent, settlement, stipulation, regulation or rule of any court or Governmental Entity to which Buyer is subject; or (b) contravene, conflict with or result in a violation of any provision of any organizational documents of Buyer; <u>except</u> that would not, individually or in the aggregate, materially adversely affect Buyer's ability to consummate the transactions contemplated hereby.

**ARTICLE VIII**
**COVENANTS AND AGREEMENTS**

8.1    <u>Conduct of Business</u>. Except as otherwise expressly contemplated by this Agreement or with the prior written consent of Buyer, from the date hereof until the Closing Date, Sellers shall use reasonable best efforts to preserve intact the Transferred Assets. Without limiting the generality of the foregoing (but subject to the express limitation set forth in the immediately preceding sentence), Sellers

7

will, other than with Buyer's consent (which consent shall not be unreasonably withheld or delayed), refrain from doing any of the following:

(a)      dispose of, transfer, assign or license, any Transferred Asset;

(b)      except as otherwise provided or required in this Agreement, reject, terminate, enter into or amend any other material Contract with respect to the businesses of any Seller that would affect the Transferred Assets or the Assumed Liabilities;

(c)      sell, transfer, license, encumber, or otherwise dispose of any Sellers-Owned Intellectual Property;

(d)      enter into any agreement or commitment that would subject Sellers to any non-competition, non-solicitation or any other material restrictions on Sellers' ability to conduct its business, or that limits or restricts the use of the Sellers-Owned Intellectual Property or any other Intellectual Property in which Sellers have any interest or right; or

(e)      authorize any of, or commit, agree in writing or otherwise, to take any of, the foregoing actions.

8.2      <u>Notification of Certain Matters</u>. Sellers shall give written notice to Buyer of: (a) a breach of any representation or warranty or covenant of Sellers contained in this Agreement, and (b) the occurrence, or failure to occur, of any event that would be reasonably likely to cause any representation or warranty of Sellers contained in this Agreement to be untrue or inaccurate at any time prior to the Closing determined as if such representation or warranty were made at such time.

8.3      <u>Access to Information</u>. From the date hereof and through the date on which the Closing occurs or this Agreement is terminated, Sellers shall cooperate with Buyer and shall give Buyer and its representatives (including Buyer's accountants, consultants, counsel and employees), upon reasonable notice and during normal business hours, access to the properties, Contracts, Leases, equipment, employees, affairs, books, documents, records, data and other information of Sellers to the extent relating to the Transferred Assets, the Assumed Liabilities and any other aspect of this Agreement, and shall cause their respective officers, employees, agents and representatives to furnish to Buyer all available documents, records and other information (and copies thereof), to the extent relating the Transferred Assets, the Assumed Liabilities, and any other aspect of this Agreement, in each case, as Buyer may reasonably request (and Seller shall use reasonable best efforts to obtain any and all consents necessary or advisable, including with respect to personnel files, to permit the sharing of such information under applicable Laws). From and after the Closing Date, Buyer shall give Seller's bankruptcy estate (either the Chief Restructuring Officer or any duly appointed Chapter 7 Trustee reasonable access at the expense of the bankruptcy estate to information necessary to analyze, defend, prosecute any litigation claim or object to any claim made against the bankruptcy estate of Seller.

8.4      <u>Public Announcement</u>. Subject to the provisions of the Bankruptcy Code and Sellers' right to make such filings and disclosures as are necessary in connection with the Bankruptcy Cases including, without limitation, marketing the Transferred Assets in accordance with the Bidding Procedures Order, no party hereto shall make or issue, or cause to be made or issued, any public announcement or written statement (including any written communication or material communications to current employees of any Seller) concerning this Agreement or the transactions contemplated hereby without the prior written consent of the other party hereto (which will not be unreasonably withheld or delayed), unless counsel to such party advises that such announcement or statement is required by Law (in which case the parties hereto shall make reasonable efforts to consult with each other prior to such required announcement). Notwithstanding

anything herein to the contrary, prior to making any filings or disclosures in connection with the Bankruptcy Cases, Sellers shall provide Buyer with a reasonable opportunity to review the text of any such filings or disclosures and incorporate all reasonable comments received from Buyer or its representatives, including any redactions or requests for confidential treatment.

8.5    Taxes.

(a)    Sellers shall be responsible for all Taxes arising out of the ownership of the Transferred Assets or the Assumed Liabilities attributable to taxable periods, or portions thereof, ending on or before the Closing, including Transfer Taxes, and, for the avoidance of doubt, all such Taxes shall be Excluded Liabilities. Without limiting the foregoing, all Transfer Taxes, to the extent attributable to periods prior to the Closing, shall be paid or otherwise discharged by Sellers.

(b)    Sellers and Buyer shall (i) provide the other with such assistance as may reasonably be requested by either of them in connection with the preparation of any Tax Return, any audit or other examination by any taxing authority or any judicial or administrative proceeding with respect to Taxes, (ii) retain and provide the other with any records or other information which may be relevant to such return, audit, examination or proceeding, and (iii) provide the other with any final determination of any such audit or examination proceeding or determination that affects any amount required to be shown on any Tax Return of the other for any period (which shall be maintained confidentially).

8.6    Further Assurances; Post-Closing Access. Subject to the other provisions hereof, Sellers shall use their reasonable best efforts to perform their obligations hereunder and to take, or cause to be taken, and do, or cause to be done, all things necessary, proper or advisable under applicable Law to cause the transactions contemplated herein to be effected as soon as practicable, but in any event on or prior to the Outside Date, in accordance with the terms hereof and shall cooperate in a commercially reasonable manner with each other party hereto and their representatives in connection with any action required to be taken as a part of their obligations hereunder. From time to time after the Closing, each of Buyer and Sellers, at the request of the other, will execute and deliver such other instruments of conveyance and transfer or other instruments or documents, and take or arrange for such other actions, as may reasonably be required to effect any of the transactions contemplated by this Agreement; provided that, notwithstanding anything to the contrary in this Section 8.6 or any other provision of this Agreement, neither Buyer nor Sellers shall be required to execute any document or take any action that would (a) increase the Liability or obligation of the party of whom such document or action is requested beyond that such party would have pursuant to the other provisions of this Agreement, (b) require or cause the party of whom such action or document is requested to initiate, join in or otherwise become a party to any Legal Proceeding, or (c) cause such party to incur any material cost or expense that is not already imposed upon it by another provision of this Agreement; provided, further that Sellers obligations terminate upon the effective date of a confirmed plan of liquidation, or conversion or dismissal of the Bankruptcy Cases.

8.7    Confidentiality. Buyer acknowledges that it has had access to and the use of confidential materials and information and trade secrets concerning the Transferred Assets, and that the protection of such confidential materials and information and trade secrets is necessary to protect and preserve the value of the Transferred Assets after the Closing. Buyer shall not use, for itself or others, or disclose, divulge or convey to others, except as necessary to fulfill its obligations under this Agreement or Buyer's Transaction Documents, any proprietary or confidential information or data related to the Transferred Assets. Confidential information and data shall include proprietary or confidential matters not published or generally known in the relevant trade or industry such as and including information about prices, costs, purchasing, profits, markets, sales or customer lists, future developments or future marketing, or merchandising but shall not include any information or data (a) that is generally available to the public (other than as a result of the disclosure directly or indirectly by Buyer or its representatives or agents), (b)

that is made available to Buyer by a third party on a non-confidential basis provided that such third party is not bound by a confidentiality agreement, or other obligation of secrecy to, with respect to such information, or (c) that is independently developed after Closing by Buyer without reference to any confidential information protected hereunder.

8.8    No Survival of Representations and Warranties. The representations and warranties of Sellers and Buyer contained in this Agreement shall terminate as of the Closing.

8.9    Change of Name. Following the Closing, and, in any event, within fifteen (15) days, each Seller shall, and shall cause their Subsidiaries to, discontinue the use of their current name (and any other trade names or "d/b/a" names currently utilized by each Seller or their Subsidiaries) and shall not subsequently change any of their names to or otherwise use or employ any name which includes the words "ShiftPixy" and the other names used by Sellers without the prior written consent of Buyer, and each Seller shall cause the name of Sellers in the caption of the Bankruptcy Cases to be changed to the new names of each Seller.

## ARTICLE IX
## CONDITIONS PRECEDENT TO BUYER'S OBLIGATION TO CLOSE

The obligation of Buyer under this Agreement with respect to the purchase and sale of the Transferred Assets shall be subject to the fulfillment on or prior to the Closing of each of the following conditions, any of which may be waived in writing by Buyer:

9.1    Accuracy of Representations and Warranties; Performance of this Agreement. Each of the representations and warranties made by Sellers shall be true and correct in all material respects on and as of the date hereof (unless such representation or warranty is given as of a particular date in which case such representation or warranty will be considered only as of such particular date) and at and as of the Closing Date. Sellers shall have complied with and performed in all material respects all of the agreements and covenants required by this Agreement and each other Transaction Document to be performed or complied with by them on or prior to the Closing.

9.2    Officer's Certificate. Sellers shall have delivered to Buyer a certificate, duly executed by an executive officer of Sellers (including incumbency certificates), certifying Sellers' compliance with the conditions set forth in Section 9.1.

9.3    Transfer, Assignment and Assumption Documents. Sellers shall have delivered to Buyer the Bill of Sale(s), Assignment and Assumption Agreement(s), Trademark Assignment Agreement(s) and other transfer documents required to be delivered pursuant to Article III, each duly executed by Sellers.

9.4    Data Room. Sellers shall have provided Buyer access to the data room maintained by Hilco Streambank in connection with the transactions contemplated by this Agreement (the "Data Room").

9.5    Bankruptcy Matters. The Sale Order shall have been entered by the Bankruptcy Court on or before December 18, 2024 (or such later time as is agreed in writing by Buyer in its sole and absolute discretion).

9.6    Winning Bidder. Buyer shall have been deemed the Successful Bidder (as such term is defined in the Bidding Procedures Order) for the Transferred Assets at any Auction.

9.7    <u>Required Consents</u>. Buyer shall have received or waived all Required Consents, in form and substance reasonably satisfactory to Buyer, which may be provided by either affirmative consent or operation of law.

9.8    <u>Release of Deposit</u>.  Sellers shall have delivered to Buyer a joint written instruction, duly executed by Seller, instructing Hilco Streambank to release to Sellers by wire transfer of immediately available funds, the Deposit.

**ARTICLE X**
**CONDITIONS PRECEDENT TO SELLERS' OBLIGATION TO CLOSE**

The obligation of Sellers under this Agreement with respect to the purchase and sale of the Transferred Assets shall be subject to the fulfillment on or prior to the Closing of each of the following conditions, any of which may be waived in writing by Sellers:

10.1    <u>Accuracy of Representations and Warranties; Performance of this Agreement</u>. Each of the representations and warranties made by Buyer in this Agreement shall be true and correct in all material respects on and as of the date hereof (unless such representation or warranty is given as of a particular date in which case such representation or warranty will be considered only as of such particular date) and at and as of the Closing Date. Buyer shall have complied with and performed in all material respects all of the agreements and covenants required by this Agreement and each other Transaction Document to be performed or complied with by it on or prior to the Closing.

10.2    <u>Officer's Certificate</u>. Buyer shall have delivered to Sellers a certificate, duly executed by an executive officer of Buyer (including incumbency certificates), certifying Buyer's compliance with the conditions set forth in <u>Section 10.1</u>.

10.3    <u>Transfer, Assignment and Assumption Documents</u>. Buyer shall have delivered to Sellers the documents required to be delivered by Buyer, if any, pursuant to <u>Article III</u>, each duly executed by Buyer.

10.4    <u>Bankruptcy Matters</u>. The Sale Order shall have been entered by the Bankruptcy Court.

10.5    <u>Winning Bidder</u>. Buyer shall have been deemed the Successful Bidder (as such term is defined in the Bidding Procedures Order) for the Transferred Assets at any Auction.

10.6    <u>Release of Deposit</u>.  Buyer shall have delivered to Sellers a joint written instruction, duly executed by Buyer, instructing Hilco Streambank to release to Sellers by wire transfer of immediately available funds, the Deposit.

**ARTICLE XI**
**TERMINATION**

11.1    <u>Breaches and Defaults; Opportunity to Cure</u>. Prior to the exercise by a party of any termination rights afforded under this Agreement, if either party (the "<u>Non-Breaching Party</u>") believes the other (the "<u>Breaching Party</u>") to be in breach hereunder, the Non-Breaching Party shall provide the Breaching Party with written notice specifying in reasonable detail the nature of such breach, whereupon, if such breach is curable the Breaching Party, shall have ten (10) calendar days from the receipt of such notice to cure such breach to the reasonable satisfaction of the Non-Breaching Party. If the breach is not cured within such time period, then the Non-Breaching Party's sole remedy shall be to terminate this Agreement if the breach is such that the condition set forth in <u>Section 9.1</u> or <u>Section 10.1</u>, as applicable,

11

shall not be satisfied (as provided in Section 11.2); provided, however, that the Non-Breaching Party shall not be entitled to terminate this Agreement if it is in material breach of this Agreement.

11.2    Termination. This Agreement may be terminated and the transactions contemplated herein may be abandoned at any time prior to the Closing:

(a)    by mutual written consent of Sellers and Buyer;

(b)    by Buyer, if any of the deadlines set forth in Section 2.2 are not met or satisfied;

(c)    unless Buyer is the Next-Highest Bidder, if the Bankruptcy Court enters an order approving the sale of the Transferred Assets to the Successful Bidder;

(d)    subject to the right to cure set forth in Section 11.1, by Buyer if Sellers are in breach of any covenant, representation, undertaking or warranty such that the condition set forth in Section 9.1 shall not be satisfied, and Buyer has not waived such condition in writing on or before the Closing Date;

(e)    subject to the right to cure set forth in Section 11.1, by Sellers if Buyer is in breach of any covenant, representation, undertaking or warranty such that the condition set forth in Section 10.1 shall not be satisfied, and Sellers have not waived such condition in writing on or before the Closing Date; or

(f)    by Sellers or Buyer if the Closing shall not have occurred on or before the Outside Date, unless the failure to have the Closing on or before the Outside Date shall be due to the failure of the party seeking to terminate this Agreement to perform in any material respect its obligations under this Agreement required to be performed by it at or prior to the Closing.

**ARTICLE XII**
**MISCELLANEOUS**

12.1    Notices. All notices and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given if delivered personally or sent by a nationally recognized overnight courier or registered or certified U.S. mail, return receipt requested, postage prepaid or electronic mail (with confirmation of receipt), to the following addresses:


If to Sellers:

Phang Feldman
2 South Biscayne Boulevard, Suite 1600
Miami, FL 33131
Attn:   Jonathan Feldman
Email:  feldman@katiephang.com


with a copy to (which shall not constitute notice):

DGIM Law
2875 NE 191st Street, Suite 705
Aventura, FL 33180

12

Attn: Isaac Marcushamer
Email: isaac@dgimlaw.com


If to Buyer:

G3 Business Services LLC
16 Mt. Bethel Rd. #112
Warren, NJ 07059
Attn: J. Ram Ajjarapu
Email: Ram@IntlCap.net

with a copy to (which shall not constitute notice):

Kaizen Law PC
5865 Ridgeway Center Parkway, Suite 300
Memphis, TN 38120
Attn: Chris Todd
Chris@KaizenLawyer.com


Notices delivered personally shall be effective upon delivery against receipt. Notices transmitted by electronic mail shall be effective when received, provided that the burden of proving when notice is transmitted by electronic mail shall be the responsibility of the party providing such notice. Notices delivered by overnight courier shall be effective when received. Notices delivered by registered or certified U.S. mail shall be effective on the date set forth on the receipt of registered or certified delivery or 72 hours after mailing, whichever is earlier.

12.2    Expenses. Each party shall bear its own expenses and costs, including the fees and expenses of any attorney retained by it, incurred in connection with the preparation of this Agreement and the consummation of the transactions contemplated hereby.

12.3    Governing Law. This Agreement shall be governed by and construed in accordance with the Laws of the State of Florida (without application of principles of conflicts of law). In connection with any controversy arising out of or related to this Agreement, Sellers and Buyer hereby irrevocably consent to the exclusive jurisdiction of the Bankruptcy Court, or if, and only if, the Bankruptcy Cases have been closed, the state or federal courts located in the State of Delaware. Sellers and Buyer each irrevocably consents to service of process out of the aforementioned courts and waives any objection which it may now or hereafter have to the laying of venue of any action or proceeding arising out of or in connection with this Agreement brought in the aforementioned courts.

12.4    Assignment. This Agreement binds and benefits the parties and their respective successors and assignees. No party hereto shall have the right to freely assign any of its rights or delegate performance of any of its obligations under this Agreement, without the prior written consent of the other parties, except that Buyer may assign any of its rights and delegate performance of any of its obligations under this Agreement (a) to any Affiliate of Buyer, or (b) in connection with a business combination transaction, provided that no such assignment or delegation will relieve Buyer from any of its obligations hereunder.

12.5    <u>Successors and Assigns</u>. Subject to <u>Section 12.4</u>, all agreements made and entered into in connection with this Transaction shall be binding upon and inure to the benefit of the parties hereto, their successors and permitted assigns.

12.6    <u>Amendments; Waivers</u>. No alteration, modification or change of this Agreement shall be valid except by an agreement in writing executed by the parties hereto. Except as otherwise expressly set forth herein, no failure or delay by any party hereto in exercising any right, power or privilege hereunder (and no course of dealing between or among any of the parties) shall operate as a waiver of any such right, power or privilege. No waiver of any default on any one occasion shall constitute a waiver of any subsequent or other default. No single or partial exercise of any such right, power or privilege shall preclude the further or full exercise thereof.

12.7    <u>Entire Agreement</u>. This Agreement (including the Exhibits which are hereby incorporated by reference into and made a part of this Agreement for all purposes) merges all previous negotiations and agreements between the parties hereto, either verbal or written, and constitutes the entire agreement and understanding between the parties with respect to the subject matter of this Agreement.

12.8    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which when so executed shall be an original, but all of which together shall constitute one agreement. Facsimile and/or PDF signatures shall be deemed original signatures.

12.9    <u>Severability</u>. If any provision of this Agreement or the application thereof to any Person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law, but only as long as the continued validity, legality and enforceability of such provision or application does not materially (a) alter the terms of this Agreement, (b) diminish the benefits of this Agreement or (c) increase the burdens of this Agreement, for any Person.

12.10    <u>Section Headings; Interpretation</u>. The section headings contained in this Agreement are solely for the purpose of reference, are not part of the agreement of the parties and shall not in any way affect the meaning or interpretation of this Agreement. As both parties have participated in the drafting of this Agreement, any ambiguity shall not be construed against either party as the drafter. Unless the context of this Agreement clearly requires otherwise, (a) "or" has the inclusive meaning frequently identified with the phrase "and/or," (b) "including" has the inclusive meaning frequently identified with the phrase "including, but not limited to", and (c) references to "hereof," "hereunder" or "herein" or words of similar import relate to this Agreement.

12.11    <u>Third Parties</u>. Nothing herein, expressed or implied, is intended to or shall confer on any Person other than the parties hereto any rights, remedies, obligations or Liabilities under or by reason of this Agreement.

12.12    <u>Specific Performance</u>. Buyer and Sellers agree that irreparable damage would occur and that the parties hereto would not have any adequate remedy at law in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. It is accordingly agreed that the parties shall be entitled to an injunction or injunctions to prevent breaches or threatened breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement in the Bankruptcy Court without proof of actual damages or otherwise (and, to the fullest extent permitted by Law, each party hereby waives any requirement for the securing or posting of any bond in connection with such remedy), this being in addition to any other remedy to which they are entitled at law or in equity.

12.13    <u>Exhibits</u>. The Exhibits attached to this Agreement shall be construed with and as an integral part of this Agreement to the same extent as if the same had been set forth verbatim herein. Any capitalized terms used in any Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

12.14    <u>Definitions</u>. For purposes of this Agreement, the term:

(a)    "<u>Advisors</u>" means, with respect to any Person, any directors, officers, employees, investment bankers, financial advisors, accountants, agents, attorneys, consultants, or other representatives of such Person.

(b)    "<u>Affiliate</u>" means, as to any Person, any other Person that, directly or indirectly, controls, or is controlled by, or is under common control with, such Person. As used in this definition, "control" (including, with its correlative meanings, "controlled by" and "under common control with") means the possession, directly or indirectly, of the powers to direct or cause the direction of management or policies of a Person, through the ownership of securities or partnership or other ownership interests, by contract or otherwise.

(c)    "<u>Bidding Procedures</u>" means those Bidding Procedures attached as <u>Exhibit 1</u> to the Bidding Procedures Order.

(d)    "<u>Bidding Procedures Order</u>" means the Order Granting Expedited Motion of Debtors for (i) Entry of an Order (a) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (b) Scheduling an Auction and a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Remaining Assets, (c) Establishing Certain Assumption and Assignment Procedures and Approving Manner of Notice Thereof, and (d) Scheduling a Hearing to Approve Assumption and Assignment of the Assumed Contracts; (ii) Entry of an Order (a) Authorizing the Debtors' Entry into an Asset Purchase Agreement; and (b) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances; (iii) Entry of an Order Approving the Assumption and Assignment of the Assumed Contracts; and (iv) Related Relief, Docket No. 97 entered by the Bankruptcy Court on December 4, 2024.

(e)    "<u>Business Day</u>" means any day on which banks are not required or authorized to close in the City of New York, New York.

(f)    "<u>Claim</u>" has the meaning under section 101(5) of the Bankruptcy Code.

(g)    "<u>Code</u>" means the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

(h)    "<u>Contract</u>" means any agreement, contract, note, mortgage, bond, indenture, lease, benefit plan or other instrument whether written or oral.

(i)    ".

(j)    "<u>Governmental Entity</u>" means any supranational, national, state, provincial, municipal, local or foreign government or any instrumentality, subdivision, court, administrative agency or commission or other authority thereof.

(k)    "<u>Intellectual Property</u>" means all domestic and foreign, federal, state and/or provincial (i) patents and patent applications, and all patents issuing thereon, including without limitation utility, model, industrial design and design patents and certificates of invention, together with all reissue

15

patents, patents of addition, divisionals, provisional applications, renewals, continuations, continuations-in-part, substitutions, additions, extensions, confirmations, re-examinations, and all foreign counterparts of the forgoing which are in the process of being prepared, and all inventions and improvements disclosed therein (collectively, "Patents"); (ii) trademarks, service marks, trade dress, trade names, brand names, designs, logos, commercial symbols and corporate names, and all registrations, applications, and goodwill associated therewith (collectively, "Trademarks"); (iii) copyrights and all works of authorship, whether or not registered or copyrightable, and all applications, registrations, and renewals in connection therewith (collectively, "Copyrights"); (iv) software, including without limitation computer programs, operating systems, applications, software, firmware, tools, data files, databases, graphics, schematics, interfaces, architecture, file formats, routines, algorithms, and any and all specifications and documentation (including training and user manuals) related thereto and all copyrights therein ("Software"); (v) domain names, Internet addresses and other computer identifiers, web sites, URLs, web pages, unique phone numbers, registrations for any of the foregoing and any and all other similar rights and items ("Domain Names"); (vi) confidential and proprietary information, including without limitation, trade secrets, know-how, formulae, ideas, concepts, discoveries, innovations, improvements, results, reports, information and data, research, laboratory and programmer notebooks, methods, procedures, proprietary technology, operating and maintenance manuals, engineering and other drawings and sketches, customer lists, supplier lists, pricing information, cost information, business manufacturing and production, processes, techniques, designs, specifications, and blueprints (collectively, "Trade Secrets"); (vii) all other intellectual property and proprietary rights in any form or medium known or later devised; and (viii) all copies and tangible embodiments, goodwill, rights of priority and protection of interests therein, and rights to recover for past, present and future infringement associated with any of the foregoing.

(l)      "IRS" means the United States Internal Revenue Service.

(m)      "Knowledge of Sellers" means the actual knowledge of Jonathan Feldman, CRO, after due inquiry.

(n)      "Law" means any constitution, treaty, statute, law, principle of common law, ordinance, rule or regulation of any Governmental Entity.

(o)      "Lease" means all leases of real property or personal property.

(p)      "Legal Proceeding" means any action, arbitration, audit, hearing, investigation, litigation or suit (whether civil, criminal, administrative, investigative or informal) commenced, brought, conducted or heard by or before, or otherwise involving, any Governmental Entity or arbitrator.

(q)      "Liability" means any liability, debt, guarantee, claim, demand, expense, commitment or obligation (whether direct or indirect, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due) of every kind and description, including all costs and expenses related thereto.

(r)      "Lien" means any mortgage, lien, claim, pledge, charge, security interest or encumbrance of any kind.

(s)      "Ordinary Course of Business" means the ordinary and usual course of normal day-to-day operations of Sellers' business, as conducted by Sellers consistent with past custom and practice (including with respect to quantity and frequency) prior to the date of the commencement of the Bankruptcy Cases; provided, that in no event shall "Ordinary Course of Business" include any breach of Law or Contract, or violation of any Permit.

(t)      "Outside Date" means December 19, 2024.

(u)      "Permit" means any license, permit, franchise, approval, authorization, registration, certification, accreditation and consent of any Governmental Entity.

(v)      "Permitted Liens" means (i) Liens for utilities and current Taxes not yet due and payable, being contested in good faith, or the nonpayment of which is permitted or required by the Bankruptcy Code; (ii) easements, rights of way, restrictive covenants, encroachments and similar non-monetary encumbrances or non-monetary impediments that do not, individually or in the aggregate, adversely affect the operation of the business of Sellers, (iii) materialmans', mechanics', artisans', shippers', warehousemans', or other similar common law or statutory liens incurred in the Ordinary Course for amounts not yet due and payable, (iv) licenses granted on a non-exclusive basis, (v) such other Liens or title exceptions as Purchaser may approve in writing in its sole discretion or that do not, individually or in the aggregate, materially and adversely affect the operation of the business of Sellers, (vi) any Liens set forth on Schedule 12.14(v), and (vii) any Liens that will be removed or released by operation of the Sale Order.

(w)      "Person" means an individual, a corporation, a partnership, a limited liability company, an association, a trust or any other entity or organization, including a Governmental Entity.

(x)      "Qualified Bid" has the meaning set forth in the Bidding Procedures.

(y)      "Sale Hearing" has the meaning set forth in the Bidding Procedures.

(z)      "Sale Motion" means the motion filed with the Bankruptcy Court by Sellers in accordance with Section 2.2 seeking (i) approval of the terms and conditions of the Transaction Documents, and (ii) authorization for (A) the sale of the Transferred Assets and pursuant to Section 363 of the Bankruptcy Code and (B) the assumption and assignment of the Assumed Contracts pursuant to Section 365 of the Bankruptcy Code, free and clear of all Liens.

(aa)      "Sale Order" means an order of the Bankruptcy Court (in a form acceptable to Buyer in its sole and absolute discretion), which shall, among other things, comply with Section 2.3(a).

(bb)      "Securities Act" means the Securities Act of 1933, as amended.

(cc)      "Sellers-Owned Intellectual Property" means any and all Intellectual Property that is owned or purported to be owned by or proprietary to Sellers.

(dd)      Subsidiary" of any Person means any corporation or other form of legal entity an amount of the outstanding voting securities of which sufficient to elect at least a majority of its board of directors or other governing body (or, if there are not such voting securities, 50% or more of the equity interests of which) is owned or controlled, directly or indirectly, by such Person.

(ee)      "Tax" means (i) all federal, state, local, foreign or other taxes of any kind and any similar fees, assessments or charges (together with any and all interest, penalties and additions to tax imposed with respect thereto) imposed by any tax authority, including taxes or other charges on or with respect to income, franchises, windfall or other profits, gross receipts, severance, excise, property, sales, use, capital stock, payroll, employment, social security, workers' compensation, unemployment compensation, unclaimed property, escheatment or net worth, and taxes or other charges in the nature of excise, withholding, ad valorem or value added; and (ii) any Liability for the payment of amounts described in clause (i) as a result of being a successor, a transferee or a member of an affiliated, consolidated,

17

combined or unitary group, or as a result of any obligation under any Tax sharing, indemnity or similar agreement or other Contract or arrangement.

(ff) "<u>Tax Return</u>" means any return, declaration, report, estimate, claim for refund, or information return or statement or other document relating to, or required to be filed in connection with, any Taxes, including any schedule, form, attachment thereto or amendment thereof.

(gg) "<u>Transaction Documents</u>" means this Agreement and all other agreements, documents and instruments executed in connection herewith or required to be executed and/or delivered by Sellers in accordance with the provisions of this Agreement.

[The next page is the signature page.]

**IN WITNESS WHEREOF**, the parties hereto have caused their respective authorized officers to duly execute this Asset Purchase Agreement as of the day and year first written above.

**G3 Business Services LLC**

By: _____
Gayathri Boyapalli (Dec 12, 2024 00:00 GMT+5.5)

Name: Gayathri Boyapalli

Title: President

**SHIFTPIXY, INC., SHIFTPIXY STAFFING,INC. AND RETHINK HUMAN CAPITALMANGEMENT, INC.**

By: _____

Name: _____

Title: _____

## SCHEDULE 1.1

Schedule A

## Trademarks

## UNITED STATES – REGISTERED TRADEMARKS

| Mark | Image | Serial Number | Registration Date | Status |
|------|-------|--------------|-------------------|--------|
| | | 88479540 | 2020-01-14 | Live |
| SHIFTPIXY LABS | SHIFTPIXY LABS | 90159815 | 2022-12-27 | Live |
| | | 88437998 | 2019-12-31 | Live |
| ZIPIXY | ZIPIXY | 88533774 | 2020-02-11 | Live |
| SHIFTPIXY | SHIFTPIXY | 86777367 | 2016-12-27 | Live |
| SHIFTPIXY | ShiftPixy | 86786929 | 2016-12-27 | Live |
| SHIFTPIXY LABS | ShiftPixy Labs | 88437998 | | Dead |

Schedule B

## **Domains**

ShiftPixy.com


Seller can convey right, title and interest on an "as is, where is" basis to the following domain names, and is investigating the ability to transfer them to a buyer.


vitalhuman.capital

techstackery.com

technologyhuman.capital

shiftpixylabs.wordpress.com

eqngo7.wordpress.com

labs.shiftpixy.com

shiftablehr.wordpress.com

rethinkhcm.com

nativedelivery.wordpress.com

marketpixy.com

insurety.capital

industrialhuman.capital

agilehuman.capital

healthhuman.capital

firemark.global

firemarkglobal.com

fastpitchen.com

cluckinlucky.com

Schedule C

**<u>Patents</u>**

| Jurisdiction | Patent No. | Title | Status | File Date |
|---|---|---|---|---|
| United States | US20180025309A1 | Shift Worker Platform | Abandoned | 2017-07-24 |

Schedule D

**<u>Social Media Accounts</u>**

Seller can convey right, title and interest to these assets, yet does not currently have the ability to transfer them to a buyer.

| Platform | Username | Reach |
|----------|----------|-------|
| Facebook | ShiftPixy | 6,700 Followers |
| Instagram | ShiftPixy | 560 Followers |
| LinkedIn | ShiftPixy | 2,000 Followers |
| Twitter | ShiftPixy | 17,800 Followers |
| YouTube | ShiftPixy | 796 Subscribers |
| TikTok | ShiftPixy | 34 Followers |

Schedule E

## **Software**

Source code for ShiftPixy's proprietary software platform and mobile application

Schedule F

**Contracts with Vendors for Software Platform**

Sendgrid
Twillio
MongoDB
AWS
GitLab
GitHub
HelloSign (Dropbox)
IBM Watson
OpenAI ChatGPT
Humanity
Microsoft - 365, AppCenter, Azure
Okta
Google Play Store
Apple Play Store
Egnyte
DreamHost
Wordpress
EasyDNS
Intacct (Accouting)
Prism
LastPass
Turn and/or Asurint

Schedule G

## Active Client List

Kose (Decorte)

Lions Floor

Seed School

Nilfisk

PoolCorp

Pactiv Evergreen

Little Caesars (Blue Line Distribution)

KW Property Management Co.

Bond No. 9

Century Trade Show Services, LLC.

Unbrako

Little Sister

Pasadena Baking Company

Schedule H

## **Public Shell**

Right, title, and interest to the $PIXY public shell.

# G3 APA - 121024 vE

**Final Audit Report**                                                                                2024-12-11

| | |
|---|---|
| Created: | 2024-12-11 |
| By: | Chris Todd (Chris@KaizenLawyer.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAZGHrIYc_XB6_01eppR37qBNIXhrAuk-s |

## "G3 APA - 121024 vE" History

📄 Document created by Chris Todd (Chris@KaizenLawyer.com)
2024-12-11 - 5:19:05 PM GMT- IP address: 76.107.191.240

📧 Document emailed to Gayathri Boyapalli (gayathri@g3bllc.com) for signature
2024-12-11 - 5:19:11 PM GMT

📄 Email viewed by Gayathri Boyapalli (gayathri@g3bllc.com)
2024-12-11 - 6:18:46 PM GMT- IP address: 172.58.109.144

🖊 Document e-signed by Gayathri Boyapalli (gayathri@g3bllc.com)
Signature Date: 2024-12-11 - 6:30:09 PM GMT - Time Source: server- IP address: 172.58.109.144

✅ Agreement completed.
2024-12-11 - 6:30:09 PM GMT

Powered by
**Adobe
Acrobat Sign**