**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| SHIFTPIXY, INC. *et, al.*[1] | Case No. 24-21209-LMI |
| Debtors._____/ | (Jointly Administered) |

**DECLARATION OF RICHELLE KALNIT (A) IN SUPPORT OF DEBTORS' EXPEDITED MOTION OF DEBTORS FOR (I) ENTRY OF AN ORDER (A) APPROVING CERTAIN BIDDING PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF, (B) SCHEDULING AN AUCTION AND A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' REMAINING ASSETS, (C) ESTABLISHING CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES AND APPROVING MANNER OF NOTICE THEREOF, AND (D) SCHEDULING A HEARING TO APPROVE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS; (II) ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTORS' ENTRY INTO AN ASSET PURCHASE AGREEMENT; AND (B) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES; (III) ENTRY OF AN ORDER APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS; AND (IV) RELATED RELIEF, AND (B) IN FURTHERANCE OF ORDER ON DEBTORS' EXPEDITED APPLICATION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 327(a) AND 328(a) AUTHORIZING THE EMPLOYMENT AND RETENTION OF HILCO IP SERVICES, LLC d/b/a HILCO STREAMBANK AS INTANGIBLE ASSETS DISPOSITION ADVISOR TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

I, Richelle Kalnit, declare as follows under penalty of perjury:

1. I am the Chief Commercial Officer and Senior Vice President of Hilco IP Services, LLC, d/b/a Hilco Streambank ("Hilco Streambank"), an intangible asset and intellectual property brokerage firm with offices in Massachusetts, New York, and the United Kingdom. Hilco Streambank has extensive experience in, and a reputation for, providing high quality intellectual

---

[1] The Debtors are: (i) Shiftpixy, Inc.; (ii) Shiftpixy Staffing, Inc.; and (iii) ReThink Human Capital Management, Inc. The address of the Debtors is 1401 NW 25th Street, Miami, FL 33142.

**EXHIBIT 2**

property disposition services to large and complex companies in bankruptcy proceedings and other distressed situations. Hilco Streambank and its principals have coordinated the marketing and sale of intellectual property assets for numerous consumer products companies, ecommerce companies and retailers in the United States and globally. As part of those engagements, Hilco Streambank was responsible for, among other things, marketing intangible assets, identifying and negotiating terms with potential stalking horse bidders, identifying potential buyers, conducting bidding auctions, and negotiating the terms of sales.

2. I have personally led the marketing and sale of intellectual property assets in a variety of bankruptcy cases in bankruptcy cases throughout the United States. In those cases, I was responsible for the marketing and sale of intangible assets on behalf of debtors and trustees, including valuable trademarks, patents, copyrights, domain names, customer lists and related data, archival materials, and related assets. I have approximately 19 years of experience advising financially distressed companies, their creditors and equity holders, the last 7 of which have been in the asset disposition arena focused exclusively on intangible assets and supporting collateral. I have enabled estates and creditors to obtain the highest value for the debtor's intellectual property and associated tangible assets in a variety of cases and contexts.

3. I submit this declaration (this "Declaration") (A) in support of the relief requested in the motion (the "Sale Motion")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") seeking, among other things, approval of the sale of the Debtors' Assets, and (B) in furtherance of the *Order Granting Debtors' Expedited Application for Entry of an Order Under 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Employment and Retention of*

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Sale Motion.

*Hilco IP Services, LLC d/b/a Hilco Streambank as Intangible Assets Disposition Advisor to the Debtors Effective as of the Petition Date* (the "Hilco Streambank Retention Order").

4. Except as otherwise stated, all statements in this Declaration are based upon my review of relevant documents, my discussions with the Debtors and their professionals, including other members of Hilco Streambank, and my personal knowledge and experience.

### Hilco Streambank's Marketing Efforts in Furtherance of Maximizing Value of the Assets

5. In connection with its engagement by the Debtors, Hilco Streambank worked with the Debtors and their professionals to identify and assemble relevant data concerning the Assets, and to market the Assets to potential buyers. Hilco Streambank's activities included:

    a. identifying the Assets and assisting the company in preserving the Assets;

    b. developing marketing materials including a detailed information sheet and website landing page (the "Teaser"): https://hilcoglobal.com/services/intellectual-property/for-sale/shiftpixy/, which described the Assets, the history of their use and their availability for sale;

    c. working with the Debtors and their counsel to advise on securing credentials for assets including domain names;

    d. synthesizing information concerning the Debtors' additional Assets, including its software platform and clients;

    e. drafting and disseminating a press release via PR Newswire describing the Assets and their availability for sale, and arranging for a piece to be published in *Staffing Industry Analysts*;

    f. developing a contact list of potential buyers of the Assets;

    g. having direct contact by phone or email with approximately 206 potential buyers of the Assets;

    h. disseminating email marketing materials that were sent to approximately 25,000 contacts from Hilco Streambank's proprietary contact database;

      i.    advertising the Assets on Hilco Streambank's LinkedIn page;

      j.    establishing and populating a virtual data room (the "Data Room") and arranging for the admission of approximately 33 parties to the Data Room who executed a form of non-disclosure agreement acceptable to the Debtors;

      k.    conducting diligence calls, including with members of the Debtors' management team, in particular the software engineering team and chief operating officer;

      l.    developing an auction format for the Assets, including a bid form and bidder qualification guidelines;

      m.    managing the Auction of the Assets;

      n.    working with the Debtors and the Successful Bidder (defined below) of the Assets to document deliverables and terms of the sale; and

      o.    continuing to work with the Debtors and their professionals to close the sale of the Assets.

### Further Marketing Efforts to Generate Qualified Bids

6.    Hilco Streambank and the Debtors notified potential buyers that any offers to acquire the Assets were required to be submitted in writing on or before December 6, 2024 at 12:00 p.m. Eastern Time (the "Bid Deadline"), together with a good-faith deposit equal to ten percent (10%) of the amount of the potential buyer's bid, along with the other requirements as set forth in the Sale Motion.[3]

7.    As a result of the efforts undertaken as described more fully above, the Debtors received bids from seven (7) interested parties. I and my team, along with the Debtors and their counsel, worked to qualify the bids received from these interested parties. Following a review of

---

[3] The Teaser advertised the opportunity to serve as a "stalking horse" bidder. In discussions that I and my team members had with interested parties, we also indicated to parties expressing interest that an opportunity to serve as a stalking horse bidder may be available. One party submitted a written indication of interest to potentially serve as a stalking horse bidder. Following various discussions, the written indication of interest did not ultimately materialize into a stalking horse bid.

the bids, the Debtors decided to set a minimum bid of $25,000 to qualify to participate in the Auction. As a result of the Debtors' efforts to qualify bids and given the minimum bid, the bids of six (6) bidders were deemed qualified as contemplated by the Sale Motion (the "Qualified Bidders").

### The Auction Generated Substantial Value for the Estates

8. On December 10, 2024, the Debtors convened the Auction among the six (6) Qualified Bidders utilizing a video conferencing platform. I conducted the auction, and Debtors' counsel Isaac Marcushamer and Chief Restructuring Officer Jonathan Feldman were also present, along with members of my team. The Auction was transcribed by a Court reporter.

9. The opening bid – which contained the highest cash consideration of all bids following submission of bids by the Bid Deadline – was the bid submitted by Strategic Application Solutions, Inc., in the amount of $1 million ($1,000,000.00).

10. On the record of the Auction, I made the following announcement:

On behalf of the Debtors, I'd like to make some disclosures with respect to Strategic Application Solutions, Inc. One of the principals of this entity is Tim Papp, who is the debtors' general counsel. On Thursday, December 5, 2024, Mr. Papp notified me, the debtors' outside counsel and the debtors' chief restructuring officer that he was considering placing a bid as part of this sale process. We advised him that given his status as a potential bidder, we would plan to treat him in a fashion consistent with all other potential bidders until such time as he is no longer a potential or actual bidder. Given that an entity affiliated with Mr. Papp did in fact place a bid, Mr. Papp has not received copies of or information about any of the bids, and until the commencement of this proceeding, he was not aware of the identities of the other bidders.

11. After the submission of approximately 29 topping bids, the Debtors selected the bid submitted by G3 Business Services LLC (the "Successful Bidder"), containing aggregate cash consideration of $1,850,000.00, as the highest and/or otherwise best bid for the Assets. The Debtors designated Strategic Application Solutions, Inc. as the Next-Highest Bidder, with a bid containing aggregate cash consideration of $1,825,000.00.

5

12. The Debtors requested that the Successful Bidder wire an additional deposit, thereby increasing the total deposit held on behalf of the Debtors to $185,000.00, or 10% of the Successful Bid, by no later than 12 pm Eastern Time on Wednesday, December 11, 2024. I have confirmed that the additional deposit has been received.

13. I believe that the sale of the Assets was negotiated, proposed, and entered into by the Debtors and the Successful Bidder without collusion and in good faith, and resulted from arm's-length bargaining positions. Moreover, to the best of my knowledge, no common identity of directors or controlling shareholders exists between the Debtors and the Successful Bidder.

14. A hearing to consider entry of an order approving the Sale Motion is scheduled before the Court on December 16, 2024. At the sale hearing, the Debtors will seek approval of the sale to the Successful Bidder.

15. I believe that the Successful Bid represents the highest and best offer available for the Assets after the reasonable and thorough marketing process conducted by Hilco Streambank and the Debtors. Accordingly, in my opinion, granting the relief requested in the Sale Motion is in the best interests of the Debtors' estates and creditors.

**Fee Declaration in Support of Hilco Streambank's Fees and Expenses**

16. The Debtors engaged Hilco Streambank to act as their intellectual property disposition advisor with respect to the Debtors' interests in their brands and trademarks, domain names, customer data, copyrights, patents, proprietary software, license agreements, IP addresses and the like (the "Intellectual Property"), as well as physical archival material (the "Related Tangible Assets") that supports the Intellectual Property (together, the "Assets") pursuant to an engagement letter (the "Engagement Letter") dated October 25, 2024 [D.I. 45].

17. Pursuant to the Hilco Streambank Retention Order dated November 26, 2024, the

Court authorized the Debtors' employment of Hilco Streambank as intellectual property consultant for the Debtors [D.I. 91].

18. The Outside Date to close the Sale is December 19, 2024. Hilco Streambank's commission becomes due and payable at the closing of a transaction, subject to the requirement set forth in the Hilco Streambank Retention Order that notice of this Fee Declaration (as defined in the Hilco Streambank Retention Order) be provided on 10 calendar days' notice to the notice parties set forth therein.

19. *Compensation*. Pursuant to the Engagement Letter, Hilco Streambank is entitled to a commission (the "Commission") upon the sale of the Assets equal to:

> i. 15% of the amount of aggregate Gross Proceeds up to and including $2 million; plus
> ii. 20% of the amount of aggregate Gross Proceeds above $2 million.

The aggregate Gross Proceeds of the sale of the Assets is $1,850,000.00. Accordingly, the Commission attributable to such amount is 15% of $1,850,000, which equals $277,500.

20. *Out-of-Pocket Expenses*. Under the Engagement Letter, Hilco Streambank shall be reimbursed for its reasonable, customary, and documented expenses up to a maximum amount of $6,500.00, unless otherwise agreed to in writing by the Debtors. In connection with the engagement to date, Hilco Streambank has incurred actual, reasonable out-of-pocket expenses as follows:[4]

> a. $500.00 in connection with the establishment and maintenance of an online data room, which is charged at a flat rate per the Engagement Letter;
>
> b. $1,546.78 in connection with Richelle Kalnit's attendance at the hearing on the bid procedures;
>
> c. $2,000.00 in connection with paid advertising on LinkedIn regarding the opportunity to acquire the ShiftPixy Assets; and

---

[4] Receipts for expenses are available upon request and have been provided to the CRO.

d. $2,643.99 in connection with the attendance of Richelle Kalnit and Paul Gleason at the Auction.[5]

21. By this Declaration, Hilco Streambank seeks approval of the Commission ($277,500.00) and out-of-pocket expenses ($6,690.77) to be paid by the Debtors.

22. The fees and costs that are the subject of this Declaration constitute a legitimate administrative expense in these proceedings payable from the proceeds of the sale of the Assets.

23. For the avoidance of doubt, consistent with the engagement letter, Hilco Streambank shall not be paid unless and until the Sale closes.

24. No agreement exists to share the compensation sought with any other individual or entity.

WHEREFORE, Hilco Streambank hereby respectfully requests approval of compensation for professional services rendered to the Debtors in the sum of $277,500.00 and reimbursement of actual and necessary expenses incurred in the sum of $6,690.77.

Dated: December 11, 2024

/s/ Richelle Kalnit
Richelle Kalnit
Chief Commercial Officer, SVP

Hilco IP Services, LLC d/b/a Hilco Streambank

---

[5] The Debtors have agreed to pay expenses in excess of $6,500, as was permitted in the Engagement Letter. Hilco Streambank will not seek reimbursement of the expenses associated with Richelle Kalnit's attendance at the Sale Hearing.