# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsb.uscourts.gov

*In re:*                                                         Case No.: 24-21209-LMI

SHIFTPIXY, INC.,[1]                                    Chapter 7
                                                                    (Jointly Administered)
      Debtors.                                           /

## TRUSTEE'S MOTION TO COMPEL ENFORCEMENT OF
## SETTLEMENT AGREEMENT WITH XL SPECIALTY INSURANCE COMPANY

      Jacqueline Calderin, as the Chapter 7 Trustee (the "Trustee"), of the jointly administered bankruptcy estates of ShiftPixy, Inc., ShiftPixy Staffing, Inc., and ReThink Human Capital Management, Inc. (collectively, the "Debtors"), files this motion (the "Motion") for entry of an order compelling enforcement of the settlement agreement by and among (1) the Trustee; (2) Scott Absher ("S. Absher"); (3) Mark Absher ("M. Absher"); (4) Manny Rivera ("Rivera") (S. Absher, M. Absher, and M. Rivera are referred to collectively as the "Insureds"); and (5) XL Specialty Insurance Company ("XL Specialty") (the foregoing collectively referred to as the "Parties") (the "Settlement Agreement"),[2] and in support of the Motion, states as follows:

### INTRODUCTION

      This Motion seeks to enforce a binding and enforceable Settlement Agreement between the Parties that was reached and confirmed by their respective representatives through email correspondence. After all material terms were agreed upon, and the Trustee reasonably relied on the Settlement Agreement to her detriment, XL Specialty now refuses to honor the Agreement based on an unrelated creditor claim that is not covered under the policy at issue and does not affect the nature or validity of the settlement. XL Specialty's refusal to perform under the

---

[1] The Debtors are: (i) Shiftpixy, Inc.; (ii) Shiftpixy Staffing, Inc.; and (iii) ReThink Human Capital Management, Inc. The address of the Debtors is 1401 NW 25th Street, Miami, FL 33142.

[2] The Settlement Agreement is confidential as it relates to the Parties' settlement discussions. The Trustee is not disclosing this material, but it can be submitted to the Court for *in-camera* review upon request or filed under seal.

1



Settlement Agreement violates the principles of contract law, and the Court should compel enforcement of same.

## FACTUAL BACKGROUND

1. On October 28, 2024 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Court").

2. After the commencement of these Chapter 11 cases, the Debtors continued in possession of their properties and continued to operate and manage the business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. On January 31, 2025, the Court converted the Debtors' Chapter 11 cases to cases under Chapter 7, and the U.S. Trustee filed a notice appointing the Trustee [ECF #179, 182].

4. Prior to the Petition Date, XL Specialty issued to ShiftPixy, Inc. Executive a Corporate Securities Liability Insurance Policy No. ELU190927-23 (the "XL Policy"), which provides a $5 million maximum aggregate limit of liability.

5. Prior to the Petition Date, XL Specialty received notice under the XL Policy of the following lawsuits filed against Shiftpixy and one or more of the Insureds: (1) *WG1, LLC, et al. v. Shiftpixy, Inc., et al.*, Case No. 30-2023-01338891 (Super. Ct. Orange Cty., CA); (2) *Apizza, LLC v. Rethink Human Capital Management, Inc., d/b/a Shiftpixy, et al.*, Case No. 30-2024-01385218 (Super. Ct., Orange Cty., CA); and (3) *Diamondback DTNM, LLC et al. v. Shiftpixy, Inc. et al.*, Case No. 8:24-cv-01278 (C.D. Cal.) (the "California Actions"). The plaintiffs in the California Actions have filed proofs of claim in this matter.

6. The Trustee has asserted claims against the Insureds and/or other directors and officers of the Debtors for alleged breaches of fiduciary duties and other wrongdoing in their

2

capacities as directors and/or officers of the Debtors, including but not limited to the matters asserted by the Trustee's letter dated April 24, 2025, to XL Specialty (the "Demand Letter") (collectively, the "Trustee Claims").

7. On November 15, 2024, Balanced Management LLC filed an arbitration proceeding against S. Absher alleging breach of a personal guarantee in connection with a business loan and securities agreement entered into by Shiftpixy, Inc. in July 2024 (the "BM Arbitration").

8. The Insureds deny liability for the Trustee Claims, the California Actions, and the BM Arbitration, and have demanded coverage under the XL Policy in connection therewith.

9. The Parties participated in good faith settlement negotiations to resolve the Trustee Claims and all matters between them concerning the Trustee Claims and the California Actions through various calls and emails between undersigned counsel, counsel for XL Specialty, Leslie Ahari ("Ms. Ahari"), and counsel for S. and M. Absher, Brad Shraiberg ("Mr. Shraiberg").

10. The essential terms of the Agreement were memorialized and confirmed through email correspondence exchanged between the undersigned, Ms. Ahari, and Mr. Shraiberg, including the following:[3]

- On June 26, 2025, the undersigned emailed Ms. Ahari and Mr. Shraiberg stating: "[m]y understanding is that both of you had an opportunity to speak yesterday, and based on that discussion we are settled on the following terms." He then listed the terms of the settlement and followed up by stating "[a]lso, if you believe I have misstated our agreement let me know that as well."

- On June 27, 2025, Ms. Ahari responded, outlining her understanding of the settlement terms and offering to prepare the initial draft of the Settlement Agreement.

---

[3] The email correspondences referenced herein are confidential as they relate to the Parties' Settlement Agreement and settlement discussions. The Trustee is not disclosing these materials, but they can be submitted to the Court for *in-camera* review upon request or filed under seal.

3



- On July 25, 2025, the undersigned thanked Ms. Ahari for completing the first draft and requested certain revisions.

- After those changes were made, on August 12, 2025, Ms. Ahari emailed the undersigned and Mr. Shraiberg stating that "XL has approved the form of the settlement agreement."

- In response, later that same day, Mr. Shraiberg confirmed that his client "has signed off" and that he would provide his bills the following day.

- On August 14, 2025, after receiving the billing information, the undersigned emailed Mr. Shraiberg and Ms. Ahari requesting that she "plug those in and re-circulate."

- Later that day, Ms. Ahari circulated the "updated draft agreement." The undersigned responded that "we are all set. Thank you. Will you take the lead on gathering signatures?"

- Mr. Shraiberg then replied that an issue had "popped up" that he was attempting to resolve. The undersigned responded "[w]ell, I hope you can, but it has nothing to do with us and our deal, which has been agreed all the way around."

11. Based on the above correspondences, the Parties reached a settlement, the terms of which are set forth in the Settlement Agreement.

12. Importantly, the Trustee detrimentally relied on the Settlement Agreement with XL Specialty by not objecting to the settlement reached between XL Specialty and Robert Angueirra as Trustee for the Estate of Industrial Human Capital ("IHC"), in Adversary Case No. 23-01257-LMI. The policy issued by XL Specialty was property of this estate, not the IHC estate, and the Trustee believed she had very valid bases to object[4] to the IHC settlement, but did not do so based on what was then a settlement in principle reached with XL Specialty on this estate's claims.

---

[4] Again, due to the settlement privilege of F.R.E. 408 the Trustee refrains from elaborating on her theories supporting objection, but will do so if requested by the Court.

4



13. Moreover, the Trustee has refrained from conducting 2004 examinations of the principals— typically initiated within the first few months after conversion. The Trustee agreed to forbear from these examinations in reliance on the settlement's terms, which required M. and S. Absher to first produce complete schedules and statements of financial affairs, along with all supporting documents. The Trustee would then set Messrs. Absher for examination on their draft schedules and statement of financial affairs, as well as a myriad of other issues in these highly complex cases. The Trustee's reliance on these terms has led her to unduly delay action that she would have otherwise promptly pursued.

14. After the Trustee, XL Insurance and the Abshers had reach settlement, counsel for the Abshers made the undersigned aware that, in addition to the arbitration initiated by Balanced Management, Balanced Management had also sued other officers and directors, as well as the Abshers on theories including breach of guarantees, and breaches of fiduciary duty.

## MEMORANDUM OF LAW

A. Legal Standard

District courts have "inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case." *Ford v. Citizens & S. Nat. Bank, Cartersville*, 928 F.2d 1118, 1121 (11th Cir. 1991); *see also Garcia v. Rambo Sec. Patrol, Inc.*, No. 08-22303-CIV, 2010 WL 750296, at *1 (S.D. Fla. Mar. 3, 2010). The courts highly favor settlements as a means of conserving judicial resources and will enforce them when possible. *See Miles v. Nw. Mut. Life Ins. Co.*, 677 F. Supp. 2d 1312, 1315 (M.D. Fla. 2009) (citing *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir.1994)).

In enforcing settlement agreements, district courts apply the law of the state that governs the agreement. *See Garcia*, 2010 WL 750296 at 2 (holding that the court was bound by Florida

45 Almeria Avenue · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

law, where the agreement had been entered into in Florida to settle litigation that had been pending in its jurisdiction); *see also In re Rolsafe Intern., LLC*, 477 B.R. 884, 901 (Bankr. M.D. Fla. 2012) (holding that state law governs the validity and enforceability of settlement agreements in bankruptcy). Settlement agreements are governed by the principles of contract law. *See Miles*, 677 F. Supp. 2d at 1315. The party seeking to enforce a settlement agreement bears the burden of proving that the opposing party assented to its terms. *See id.*

Under Florida law, courts apply an objective test in deciding whether an enforceable contract exists. *Id.* (citing *Robbie v. City of Miami*, 469 So.2d 1384, 1385 (Fla.1985) (noting that it matters not whether there was "the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing.")). "The creation of a contract requires that there be mutual assent to a certain and definite proposition." *ABC Liquors, Inc. v. Centimark Corp.*, 967 So.2d 1053, 1056 (Fla. 5th DCA 2007). "If a purported agreement leaves open its essential terms for future negotiation, or merely constitutes an agreement to agree, then there is no enforceable contract." *Miles*, 677 F. Supp. 2d at 1315.

    B.  <u>The Parties Reached a Binding Settlement Agreement.</u>

Despite the clear manifestation of mutual assent to all essential terms of the Settlement Agreement, XL Specialty now refuses to honor its obligations based on a newly raised issue involving and unrelated creditor claim that has no bearing on the settlement reached between the Parties. This position is contrary to established Florida contract law and the strong public policy favoring the enforcement of settlements.

As detailed above, the Parties' counsel, through a series of deliberate and clear communications, negotiated and finalized all material terms of the settlement. These included (1)

**45 Almeria Avenue · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

the settlement amount; (2) the scope of released claims; and (3) prior payments. The Parties explicitly confirmed their assent to these terms through email. Notably, Ms. Ahari wrote that "XL has approved the form of the settlement agreement," and Mr. Shraiberg confirmed his client had "signed off." Mr. Charbonneau responded, "we are all set," and asked Ms. Ahari to "take the lead on gathering signatures." These statements objectively reflect a "meeting of the minds" as required by Florida law. *See Robbie*, 469 So.2d at 1385; *see also Miles*, 677 F. Supp. 2d at 1315. Moreover, those emails constitute a binding contract under well-established principles of contract formation because once all essential terms are agreed to, the agreement is enforceable, even if a formal writing was contemplated but never signed. *See id.* at 1316.

Florida courts have recognized settlement agreements reached through email correspondence, even in the absence of a signed agreement. *See id.*; *see also Welch v. N. Am. Tank Line, Inc.*, No. 8:06CIV2340 T 17 MAP, 2008 WL 3982394, at *1 (M.D. Fla. Aug. 25, 2008) (holding that an email exchange between the parties' attorneys constituted a binding settlement agreement because the essential terms of the agreement were mutually agreed upon). In *Miles*, the court held that a binding and enforceable settlement agreement had been formed through an exchange of emails between the parties' counsel, despite the absence of a signed, formal agreement. 677 F. Supp. 2d at 1315. The court found that the parties entered into a binding and enforceable settlement agreement through an email exchange between counsel, which outlined all essential terms, including payment provisions, a release, and case dismissal. *See id.* The dispute arose after both sides agreed to settle on specific terms via email but later disagreed over the language of a drafted settlement document. *See id.* The defendant sought to compel the plaintiff to sign its version of the agreement, arguing that the deal was incomplete without it. *See id.* Applying Florida contract law, the court emphasized that mutual assent to the

essential terms—clearly reflected in the email exchange—was sufficient to form a valid contract. *See id.*

Having induced reliance by the Debtors, who ceased litigation efforts based on the settlement discussions with Ms. Ahari and Mr. Shraiberg, XL Specialty cannot now backtrack simply because a collateral issue has arisen. Such conduct would not only frustrate the strong policy favoring settlement but would also prejudice the Debtors and the estate. Accordingly, the Settlement Agreement is binding and enforceable under Florida law. The Court should compel XL Specialty to perform in accordance with its agreed-upon terms.

### C. XL Specialty's Excuse for Reneging is Legally Meritless.

XL Specialty is attempting to renege the Settlement Agreement based on a separate claim by Balanced Management , asserting claims for breach of fiduciary duty and breach of guarantee. Importantly, the breach of guarantee claim is outside of the scope of the D&O coverage. Further, the claim for breach of fiduciary duty is an estate asset. First, 11 U.S.C. §541(a)(1) provides that the estate comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." Courts uniformly interpret this to include any causes of action the debtor could have asserted pre-petition, including suits against directors or officers for misconduct. *See In re Gen. Dev. Corp.*, 179 B.R. 335, 338 (S.D. Fla. 1995) (holding that once bankruptcy is filed, "the bankruptcy estate includes all legal claims owned by [the] corporate debtor, including derivative actions brought by shareholders."). As a result, the trustee (or debtor-in-possession) "is vested with title to all assets of the estate and becomes the estate's legal representative," and derivative claims are among these assets. *See id.*; *see also In re All Am. of Ashburn, Inc.*, 805 F.2d 1515, 1518 (11th Cir. 1986) (holding that shareholders could not bring a derivative suit because the claims "belong primarily to the debtor corporation" and the trustee

45 Almeria Avenue · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

had already settled them); *Mukamal v. Bakes*, 378 Fed. Appx. 890 (11th Cir. 2010) (upholding dismissal of creditors' direct breach claims because directors owe no duty to creditors after insolvency, and creditors had "no direct claim" for breach of duty).

Breach of fiduciary duty claims are almost always derivative: they are the company's cause of action against directors. In *In re Caribbean K Line, Ltd.*, 288 B.R. 908 (S.D. Fla. 2002), the court held that the bankruptcy trustee had standing to pursue a breach of fiduciary duty claim against Arwood because the harm caused by Arwood's actions affected both the insolvent corporation and the general body of creditors, not just a specific subset of creditors. The court emphasized that the fiduciary duty breached was owed simultaneously to the corporation and its creditors, and because the claims could have been brought by the corporation before bankruptcy (or via derivative action), they became property of the estate under § 541 of the Bankruptcy Code. *See id.* Therefore, only the trustee could pursue them for the benefit of the estate. *See id.*

Thus, only the estate may assert such claims for breach of fiduciary duty. Balance Management has not alleged that it suffered any unique damages which would entitle it to bring a claim under the XL Policy. XL Specialty cannot use this unrelated and meritless claim to skirt its contractual obligations under the Settlement Agreement.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an Order (a) approving the Settlement Agreement; (b) granting this Motion; and (c) granting any further relief as the Court deems appropriate.

By: */s/ Robert P. Charbonneau*
Robert P. Charbonneau
Florida Bar No: 968234
rpc@agentislaw.com

45 Almeria Avenue · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case on September 5, 2025.

>**AGENTIS PLLC**
>*Attorneys for Chapter 7 Trustee*
>45 Almeria Avenue
>Coral Gables, Florida 33134
>T 305.722.2002
>www.agentislaw.com
>
>By:   */s/ Robert P. Charbonneau*
>         Robert P. Charbonneau
>         Florida Bar No: 968234
>         rpc@agentislaw.com