### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION
### www.flsb.uscourts.gov

*In re:*

SHIFTPIXY, INC.,[1]

      Debtors.                 /

Case No.: 24-21209-LMI

Chapter 7
(Jointly Administered)

### MOTION TO APPROVE SETTLEMENT AGREEMENT BY AND BETWEEN JACQUELINE CALDERIN, TRUSTEE AND AMANDA MURPHY

**ANY INTERESTED PARTY WHO FAILS TO FILE AND SERVE A WRITTEN RESPONSE TO THIS MOTION WITHIN 21 DAYS AFTER THE DATE OF SERVICE STATED IN THIS MOTION SHALL, PURSUANT TO LOCAL RULE 9013-1(D), BE DEEMED TO HAVE CONSENTED TO THE ENTRY OF AN ORDER IN THE FORM ATTACHED TO THIS MOTION. ANY SCHEDULED HEARING MAY THEN BE CANCELED.**

Jacqueline Calderin, as the Chapter 7 Trustee (the "Trustee"), of the jointly administered bankruptcy estates of ShiftPixy, Inc., ShiftPixy Staffing, Inc., and ReThink Human Capital Management, Inc. (collectively, the "Debtors"), by and through undersigned counsel, files this motion (the "Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 9013-1(D) and 9019-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida, for entry of an order (i) approving the settlement agreement attached hereto as **Exhibit "A"** (the "Agreement") by and between the Trustee and Amanda Murphy (the "Murphy," and together with the Trustee, the "Parties" and each individually a "Party") and in support therefore states as follows:

---

[1] The Debtors are: (i) Shiftpixy, Inc.; (ii) Shiftpixy Staffing, Inc.; and (iii) ReThink Human Capital Management, Inc. The address of the Debtors is 1401 NW 25th Street, Miami, FL 33142.



**45 Almeria Avenue · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

## BACKGROUND

### A. The Bankruptcy Case

1.      On October 28, 2024 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Court").

2.      After the commencement of these Chapter 11 cases, the Debtors continued in possession of their properties and continued to operate and manage the business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On January 31, 2025, the Court converted the Debtors' Chapter 11 cases to cases under Chapter 7, and the U.S. Trustee filed a notice appointing the Trustee [ECF #179, 182].

4.      On or about June 6, 2024, Murphy brought an action against the Debtor, which is pending as *Amanda Murphy v. ShiftPixy, Inc., et al.,* Superior Court of California, County of Orange Case No.: OCSC 30-2024-01404937-CU-OE-NJC (the "Lawsuit"). In the Lawsuit, Murphy asserts claims for (1) Hostile Work Environment Harassment in violation of the California Fair Employment and Housing Act ("FERA"); (2) Race/National Origin/Gender Discrimination in violation of FEHA; (3) Retaliation in violation of PEHA; (4) Defamation Per Se; (5) Failure to Pay Wages Upon Discharge; (6) Waiting Time Penalties; (7) Failure to Pay Accrued Vacation; (8) Failure to Pay 1 Unreimbursed Expenses; (9) Failure to Prevent Discrimination, Harassment, and Retaliation; (10) Wrongful Termination in Violation of Public Policy; and (11) Retaliation in Violation of Labor Code Section 1102.5.

5.      On July 25, 2024, the Lawsuit was removed to the Federal District Court for the Central District of California and assigned as Case Number 8:24-cv-01634-JWH-AGR.



6.     On January 2, 2025, Murphy filed a proof of claim, Claim No. 55-1, in the amount of $4,674,337.67 (the "Murphy Claim").

7.     On March 6, 2025, the Bankruptcy Court entered the *Agreed Order Granting Motion for Relief from the Automatic Stay [ECF No. 195]* [ECF No. 205], which granted stay relief to Murphy for the purpose of allowing Murphy to prosecute and liquidate her claims in the Lawsuit and pursue recovery solely against the applicable insurance policy.

8.     The Parties have reached a settlement, the terms of which are set forth in the Settlement Agreement and General Release (the "Agreement").[2]  A true and correct copy of the Agreement is attached hereto as **Exhibit A.**

### B.  The Settlement Agreement

9.     Pursuant to the Agreement, the remaining balance of the policy limit of Policy #0313-9759 covering the policy period of September 1, 2023 to August 4, 2024, and applicable to Murphy's claims in the Lawsuit, will be paid to her subject to this Court's approval, in an amount no less than Eight Hundred and Fifty Thousand Dollars and NO/CENTS ($850,000.00) (the "Settlement Payment").

10.     Murphy, and Murphy's heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge ShiftPixy, Inc., ShiftPixy, Inc's past present and future direct or indirect parent organizations, subsidiaries, divisions, affiliated entities, and its and their partners, officers, directors, trustees, administrators, fiduciaries, employment benefit plans and/or pension plans or funds, executors, attorneys, employees, insurers, reinsurers and/or agents and their successors and assigns, including the Trustee, the Bankruptcy estate, Scott Absher and Connie Absher, individually and in their official capacities

---

[2] To the extent the summary of settlement terms referenced in this Motion is inconsistent with the provisions of the Agreement, the provisions of the Agreement shall control.



(collectively referred to herein as "Releasees"), jointly and severally, of and from any and all claims, known and unknown, asserted or unasserted, which Plaintiff has or may have against Releasees as of the date of execution of this Agreement.

11.     The Murphy Claim will be withdrawn.

12.     The Lawsuit will be dismissed with prejudice.

**RELIEF REQUESTED AND BASIS THEREFOR**

11.     By this Motion, the Trustee seeks approval of the Agreement entered into by and between the Trustee and Murphy pursuant to Bankruptcy Rule 9019(a).  The Agreement, which avoids the costs and uncertainty of litigating the Litigation, should be approved because it is fair, equitable, and in the best interests of the Estate and its creditors.

12.     A bankruptcy court may approve a compromise or settlement under Bankruptcy Rule 9019(a).  Approval of a settlement in bankruptcy proceedings is within the sound discretion of the Court and will not be disturbed or modified on appeal unless approval is an abuse of discretion.  *See In re Arrow, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988).

13.     The Eleventh Circuit's legal standard for approval of settlements is outlined in *In re Justice Oaks, II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990).  *Justice Oaks* requires that the Court consider: (1) the probability of success in litigation; (2) the difficulties, if any, to be encountered in collection; (3) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.  *Id.*  In determining the reasonableness of a proposed settlement, the test is whether the proposed settlement "falls below the lowest point in the range of reasonableness."  *Id.*  The Debtor submits that the Settlement



Agreement is well within the "range of reasonableness," and satisfies the legal standard set forth in *Justice Oaks*.

14.    In particular, approval of the Agreement will enable the estate to avoid the uncertainty of further litigation of the Lawsuit which is the subject of this settlement, and the costs of such litigation, and given the significant factual and expert discovery and substantial fact and expert witness testimony through trial, which would be required.

15.    In applying the foregoing factors, the Trustee submits that the Agreement falls well within the requisite "range of reasonableness" and also satisfies the legal standard set forth in *Justice Oaks* as follows:

a. **Probability of Success in Litigation:**  Due to the inherently unpredictable nature of litigation and the fact-intensive nature of Murphy's claims and the asserted defenses, Murphy's probability of successfully obtaining a judgment against the Trustee is uncertain.

b. **Collectability:** The settlement payment to Murphy is being paid by the insurer, and not the bankruptcy estate.

c. **Complexity of the Litigation Involved:**  The Litigation that is the subject of the Agreement is complex.  Because this type of litigation is highly fact-driven, litigation would be extensive and time consuming, and the potential to resolve fact issues by dispositive motions may be limited, rendering this a case that if not settled, would likely need to be tried.

d. **Best Interest of the Creditors:** Trustee believes that the Agreement is in the best interest of creditors.  The Litigation will be resolved, through the payment of the

5



insurance proceeds, and claims against the estate will be reduced by over $4 million.

16.     Given the elimination of litigation, reduction of claims against the estate and the preservation of estate resources, the proposed settlement falls well above the lowest point in the range of reasonableness required under *In re Justice Oaks*. The Trustee respectfully submits that its approval is both warranted and in the best interests of creditors.

**WHEREFORE** the Trustee respectfully requests that the Court enter an order in the form attached hereto as **Exhibit "B"** (a) approving the Agreement and (b) granting any further relief as the Court deems appropriate.

Dated:  March 24, 2026

Respectfully Submitted,

**AGENTIS PLLC**
*Counsel for the Trustee*
45 Almeria Avenue
Coral Gables, Florida 33134
T. 305.722.2002
www.agentislaw.com

By:   */s/ Jesse R. Cloyd*
        Jesse R. Cloyd
        Florida Bar No: 58388
        jrc@agentislaw.com



**Exhibit "A"**
(Agreement)



## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is entered into by and between **ShiftPixy, Inc.** (referred to throughout this Agreement as "Defendant") and **Amanda Murphy** ("Plaintiff"). The term "Party" or "Parties" as used herein shall refer to Defendant, Plaintiff, or both, as may be appropriate.

1.     **Recitals.**

This Agreement is made with reference to the following facts:

(a)     Plaintiff was formerly employed by Defendant;

(b)     Plaintiff's last day of employment with Defendant was March 6, 2024 ("Separation Date");

(c)     On or about June 6, 2024, Plaintiff brought an action against Defendant, which is pending as *Amanda Murphy v. ShiftPixy, Inc., et al.*, Superior Court of California, County of Orange Case No.: OCSC 30-2024-01404937-CU-OE-NJC (the "Lawsuit"). In the Lawsuit, Plaintiff asserts claims for (1) Hostile Work Environment Harassment in violation of the California Fair Employment and Housing Act ("FEHA"); (2) Race/National Origin/Gender Discrimination in violation of FEHA; (3) Retaliation in violation of FEHA; (4) Defamation Per Se; (5) Failure to Pay Wages Upon Discharge; (6) Waiting Time Penalties; (7) Failure to Pay Accrued Vacation; (8) Failure to Pay Unreimbursed Expenses; (9) Failure to Prevent Discrimination, Harassment, and Retaliation; (10) Wrongful Termination in Violation of Public Policy; and (11) Retaliation in Violation of Labor Code Section 1102.5;

(d)     On July 25, 2024, the Lawsuit was removed to the Federal District Court for the Central District of California and assigned as Case Number 8:24-cv-01634-JWH-AGR;

(e)     On October 28, 2024, ShiftPixy filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*) in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), commencing Case No. 1:24-bk-21209 (the "Bankruptcy Action");

(f)     On March 6, 2025, the Bankruptcy Court granted Plaintiff's Motion for Relief from Stay for the sole purpose of allowing Plaintiff to prosecute and liquidate her claims in the Lawsuit and pursue recovery solely against Insurance Proceeds available;

(g)     There has been no determination on the merits of the Lawsuit but, in order to avoid additional cost and the uncertainty of litigation, Plaintiff and Defendant have chosen to enter into this Agreement.

2.     **Consideration/Indemnification for Tax Consequences and Liens.**

(a)     In consideration for Plaintiff signing this Agreement, and complying with its terms and subject to the revocation language below, it is agreed that the remaining balance of the policy limit of Policy #0313-9759 covering the policy period of September 1, 2023 to August

1

4, 2024, and applicable to Plaintiff's claims in the Lawsuit, will be paid to Plaintiff provided that the Bankruptcy Court approves this Settlement Payment, in an amount not less than EIGHT HUNDRED AND FIFTY THOUSAND DOLLARS AND NO/CENTS ($850,000) (the "Settlement Payment").

(b)     The Settlement Payment will be paid as one payment for alleged emotional distress, liquidated damages, other non-wage damages and/or attorneys' fees and costs by check made payable to "Amanda Murphy" and "Gilleon Law Firm, APC" ("Plaintiff's Counsel"), for which Defendant's insurer shall issue an IRS Form 1099-MISC to each of Plaintiff and Plaintiff's Counsel;

(c)     Plaintiff agrees that Plaintiff is responsible for all applicable taxes, if any, as a result of the receipt of these monies in Paragraph 2(a). Plaintiff understands and agrees Defendant is providing Plaintiff with no representations regarding tax obligations or consequences that may arise from this Agreement. Plaintiff, for Plaintiff and Plaintiff's dependents, successors, assigns, heirs, executors, and administrators (and Plaintiff's legal representatives of every kind), agrees to indemnify and hold the Releasees (as defined herein) harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Releasees in connection with such governmental authority's determination that Defendant, Defendant's insurer, or any of the other Releasees was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made to Plaintiff or Plaintiff's Counsel pursuant to Paragraph 2(a) of this Agreement. Plaintiff agrees that Plaintiff shall indemnify the Releasees for the full amount of such liability within thirty (30) days after receipt of notice from Defendant, Defendant's insurer, or any of the other Releasees of the assessment of such taxes, penalties, or interest.

(d)     Any settlement payments made by check set forth in this paragraph will be delivered to Plaintiff's Counsel at 1414 Luneta Dr., Del Mar, CA 92014.

### 3.     No Consideration Absent Execution of this Agreement.

Plaintiff understands and agrees that Plaintiff would not receive the monies and/or benefits specified in Paragraph 2(a) above, except for Plaintiff's timely execution of this Agreement and the fulfillment of the promises contained herein.

### 4.     Disbursal of Settlement Funds/Dismissal of Action.

(a)     The settlement payments described in Paragraph 2(a) will be sent within fifteen (15) days after the latest of the following have occurred:

(1)     counsel for Defendant receives a copy of the Agreement signed by Plaintiff;

(2)     counsel for Defendant receives an executed W-9 Form from Plaintiff's Counsel;

(3)     counsel for Defendant receives an executed W-9 Form from Plaintiff;

2

(4)     counsel for Defendant receives an original letter from Plaintiff in the form attached as Exhibit "A" and signed and dated at least eight (8) days after Plaintiff's execution of this Agreement;

(5)     receipt of an original fully-executed Request for Dismissal with prejudice of the Lawsuit as to all parties and all causes of action;

(6)     receipt of an original fully-executed Stipulation for Dismissal with prejudice of the Lawsuit pending in Federal Court as to all parties and all causes of action;

(7)     the Parties obtain approval of the Agreement in the Bankruptcy Action; and

(8)     the revocation period following the signing of this Agreement has expired.

(b)     If the date by which the payment described herein is to be made available to Plaintiff's Counsel falls on a Saturday, Sunday, or legal holiday in the State of California, then the date said payment shall be made available to Plaintiff's Counsel shall be the next following day which is not a Saturday, Sunday, or legal holiday in the State of California.

(c)     Defendant's Counsel shall maintain custody of the original fully-executed Requests for Dismissal of the Lawsuit. Defendant's Counsel shall agree not to file the Requests for Dismissal until confirmation of Plaintiff's Counsel's receipt of the settlement sums set forth in Section 2 above. Thereafter, Defendant's Counsel shall have the authority to immediately file the Request for Dismissal with the Court. No Party shall claim to be the prevailing party in the Lawsuit.

5.     **General Release, Claims Not Released and Related Provisions.**

**General Release of All Claims.**  Plaintiff and Plaintiff's heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge Defendant, Defendant's past, present and future direct or indirect parent organizations, subsidiaries, divisions, affiliated entities, and its and their partners, officers, directors, trustees, administrators, fiduciaries, employment benefit plans and/or pension plans or funds, executors, attorneys, employees, insurers, reinsurers and/or agents and their successors and assigns, including Defendant's trustee in the Bankruptcy Action, the Bankruptcy estate, Scott Absher and Connie Absher, individually and in their official capacities (collectively referred to herein as "Releasees"), jointly and severally, of and from any and all claims, known and unknown, asserted or unasserted, which Plaintiff has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the following, as amended:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA");
- The Internal Revenue Code of 1986;
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act

3

of 1990;

- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act of 2008;
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA");
- Families First Coronavirus Response Act;
- The Pregnant Worker's Fairness Act ("PWFA")
- California Family Rights Act – Cal. Gov't Code § 12945.2;
- California Fair Employment and Housing Act – Cal. Gov't Code § 12900 et seq.;
- California Unruh Civil Rights Act – Cal. Civ. Code § 51 et seq.;
- Statutory Provisions Regarding the Confidentiality of AIDS Information – Cal. Health & Safety Code

- § 120775 et seq.;
- California Confidentiality of Medical Information Act – Cal. Civ. Code § 56 et seq.;
- California Parental Leave Law – Cal. Lab. Code § 230.7 et seq.;
- California Military Personnel Bias Law – Cal. Mil. & Vet. Code § 394;
- The California Occupational Safety and Health Act, as amended, and any applicable regulations thereunder;
- The California Consumer Credit Reporting Agencies Act – Cal. Civ. Code § 1785 et seq.
- California Investigative Consumer Reporting Agencies Act – Cal. Civ. Code § 1786 et seq.;
- Those provisions of the California Labor Code that lawfully may be released;
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

(b)    **Claims Not Released.** Plaintiff is not waiving any rights Plaintiff may have to: (i) Plaintiff's own vested or accrued employee benefits under Defendant's qualified retirement benefit plans as of the Separation Date; (ii) benefits or rights to seek benefits under applicable workers' compensation (except as to claims under Labor Code sections 132a and 4553) or unemployment insurance or indemnification statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; or (iv) enforce this Agreement.

(c)    **Governmental Agencies.** Nothing in this Agreement or any other agreement Plaintiff may have signed or company policy, prohibits, prevents, or otherwise limits Plaintiff from (1) reporting possible violations of federal or other law or regulations to any governmental agency, legislative, regulatory or judicial body, or law enforcement authority (e.g., EEOC, NLRB, SEC, DOJ, CFTC, any federal agency responsible for workplace safety, U.S. Congress, or an Inspector General), (2) filing a charge or complaint with any such governmental entity, or (3) participating, testifying, or assisting in any investigation, hearing, or other proceeding brought by, in conjunction with, or otherwise under the authority of any such governmental entity. To the maximum extent permitted by law, Plaintiff agrees that if such an administrative claim is made, Plaintiff shall not be entitled to recover any individual monetary relief or other individual remedies related to any alleged adverse employment action(s), except nothing in this Agreement

4

prohibits, prevents, or otherwise limits Plaintiff's ability or right to seek or receive any monetary award or bounty from any such governmental entity in connection with protected "whistleblower" activity. Plaintiff is also not required to notify or obtain permission from Defendant when filing a governmental whistleblower charge or complaint or engaging or participating in protected whistleblower activity.

(d)     **Collective/Class Action Waiver and Jury Waiver.** If any claim is not subject to release, to the extent permitted by law, Plaintiff waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Defendant or any other Releasee identified in this Agreement is a party. Similarly, as to any such claim against any Releasee that is not otherwise released, Plaintiff waives Plaintiff's right to a jury trial subject to applicable law.

(f)     **Waiver of California Civil Code Section 1542.** To effect a full and complete general release as described above, Plaintiff expressly waives and relinquishes all rights and benefits of Section 1542 of the Civil Code of the State of California, and does so understanding and acknowledging the significance and consequence of specifically waiving Section 1542. Section 1542 of the Civil Code of the State of California states as follows:

**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Thus, notwithstanding the provisions of Section 1542, and to implement a full and complete release and discharge of the Releasees, Plaintiff expressly acknowledges this Agreement is intended to include in its effect, without limitation, all claims Plaintiff does not know or suspect to exist in Plaintiff's favor at the time of signing this Agreement, and that this Agreement contemplates the extinguishment of any such claims. Plaintiff warrants Plaintiff has read this Agreement, including this waiver of California Civil Code Section 1542, and that Plaintiff has consulted with or had the opportunity to consult with counsel of Plaintiff's choosing about this Agreement and specifically about the waiver of Section 1542, and that Plaintiff understands this Agreement and the Section 1542 waiver, and so Plaintiff freely and knowingly enters into this Agreement. Plaintiff further acknowledges that Plaintiff later may discover facts different from or in addition to those Plaintiff now knows or believes to be true regarding the matters released or described in this Agreement, and even so Plaintiff agrees that the releases and agreements contained in this Agreement shall remain effective in all respects notwithstanding any later discovery of any different or additional facts. Plaintiff expressly assumes any and all risk of any mistake in connection with the true facts involved in the matters, disputes, or controversies released or described in this Agreement or with regard to any facts now unknown to Plaintiff relating thereto.

6.     **Acknowledgements and Affirmations.**

(a)     Plaintiff affirms that Plaintiff has not filed, caused to be filed, or presently is a party to any claim against Defendant, except the Lawsuit, which is being dismissed with

5

prejudice. Nothing in this Agreement or these Affirmations is intended to impair Plaintiff's rights under whistleblower laws or cause Plaintiff to disclose Plaintiff's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(b)     Plaintiff also affirms that Plaintiff has been paid and/or has received all compensation, wages, bonuses, commissions, paid sick leave, predictability pay, and/or benefits which are due and payable as of the date Plaintiff signs this Agreement and Plaintiff has been reimbursed for all necessary expenses or losses incurred by Plaintiff within the scope of Plaintiff's employment. Plaintiff further affirms that Plaintiff has submitted expense reports for all necessary expenses or losses incurred by Plaintiff within the scope of Plaintiff's employment. Plaintiff affirms that Plaintiff has been granted any leave to which Plaintiff was entitled under the Family and Medical Leave Act and state and local leave and disability accommodation laws.

(c)     Plaintiff further affirms that Plaintiff has no known workplace injuries or occupational diseases.

(d)     Plaintiff also affirms that Plaintiff has not divulged any proprietary or confidential information of Defendant and will continue to maintain the confidentiality of such information consistent with Defendant's policies and Plaintiff's agreement(s) with Defendant and/or common law. Under the federal Defend Trade Secrets Act of 2016, Plaintiff shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Plaintiff's attorney in relation to a lawsuit against Defendant for retaliation against Plaintiff for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(e)     Plaintiff further affirms that Plaintiff has not reported internally to Defendant any allegations of wrongdoing by Defendant or its officers, including any allegations of corporate fraud, and Plaintiff has not been retaliated against for reporting or objecting to any such allegations internally to Defendant, except as alleged in the Lawsuit and which claims are expressly released in Paragraph 5(a) above.

(f)     Plaintiff affirms that all of Defendant's decisions regarding Plaintiff's pay and benefits through the date of Plaintiff's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law, except as alleged in the Lawsuit and which claims are expressly released in Paragraph 5(a) above.

(g)     Plaintiff and Defendant acknowledge Plaintiff's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

7.     **Medicare Secondary Payer Rules.**

Plaintiff represents and warrants that Plaintiff is not Medicare eligible and that Medicare has not made any conditional payments for medical services or products received by Plaintiff (pursuant to U.S.C. § 1395y(b) and the corresponding regulations) and related to the accident(s), injury(ies), or illness(es) giving rise to this Agreement. Further, Plaintiff represents and warrants that if any conditional payments related to the accident(s), injury(ies), or illness(es) giving rise to this settlement are or have been made by Medicare, then within sixty (60) days of the execution of the Agreement, Plaintiff shall reimburse Medicare for such conditional payments as required by Medicare Secondary Payer law, including Medicare regulations at C.F.R. § 411.24(g) and (h).

Plaintiff agrees to indemnify, hold harmless, and defend Allied World Insurance Company against any loss, cost, expense, or liability imposed upon or incurred by Allied World Insurance Company arising from, relating to or concerning Medicare conditional payments related to the accident, injury, or illness giving rise to this settlement.  The Parties agree that all representations and warranties made herein shall survive settlement.

While it is impossible to accurately predict the need for medical treatment, this settlement is based upon a good faith determination of the parties in order to resolve a disputed claim. The Parties have attempted to resolve this matter in compliance with both state and federal law and it is believed that the settlement terms adequately consider and protect Medicare's interest and do not reflect any attempt to shift responsibility of treatment to Medicare pursuant to 42 U.S.C. Sec. 1395y(b). The Parties acknowledge and understand that any present or future action or decision by CMS or Medicare on this settlement, or Plaintiff's eligibility or entitlement to Medicare or Medicare payments, will not render this release void or ineffective, or in any way affect the finality of this liability settlement).

8.     **Governing Law and Interpretation.**

This Agreement shall be governed and conformed in accordance with the laws of California without regard to its conflict of laws provision; provided, however, that parol evidence shall not be admissible to alter, vary, or supplement the terms of this Agreement. In the event of a breach of any provision of this Agreement, either Party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. In an action to enforce any term or terms of this Agreement or to seek damages for breach of this Agreement, the prevailing Party in that action shall be entitled to recover reasonable attorneys' fees and costs. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. Should a court declare or find the general release in this Agreement to be unenforceable for any reason, Plaintiff agrees to sign a replacement release in a form provided by Defendant. It is the intent of the Parties, pursuant to Evidence Code sections 1122(a)(1) and 1123, that all of the terms of this Agreement shall be admissible and shall be enforceable and binding upon them in a court of law.

7

## 9.    Nonadmission of Wrongdoing.

The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

## 10.    Amendment.

This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

## 11.    Entire Agreement.

This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except for any arbitration, intellectual property, noncompete, restrictive covenant, non-solicitation, nondisclosure, or confidentiality agreements between Defendant and Plaintiff, which shall remain in full force and effect according to their terms. Plaintiff acknowledges that Plaintiff has not relied on any representations, promises, or agreements of any kind made to Plaintiff in connection with Plaintiff's decision to accept this Agreement, except for those set forth in this Agreement.

## 12.    Counterparts and Signatures.

This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail, or which is made electronically, will have the same effect as the original signature.

## 13.    Mutual Negotiation.

This Agreement was the result of negotiations between the Parties and their respective counsel. In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it. Instead, it shall be construed as if both Parties prepared it jointly.

## 14.    Third Party Beneficiaries.

All Releasees are third party beneficiaries of this Agreement for purposes of the protections offered by this Agreement, and they shall be entitled to enforce the provisions of this Agreement applicable to any such Releasee as against Plaintiff or any party acting on Plaintiff's behalf.

## 15.    No Transfer/Assignment of Claims.

Plaintiff warrants and represents that Plaintiff has not assigned or transferred or purported to assign or transfer to any person or entity all or any part of or any interest in any claim released under this Agreement. Plaintiff and Plaintiff's Counsel agree that they solely are responsible for the satisfaction of any assignment or lien to any lien holder and will indemnify and hold the Releasees harmless against any liens, damages, penalties, fines, fees, assessments, taxes, or

attorneys' fees that may be imposed against or incurred by any of the Releasees as a result of the actions of any lien holder or any lien Plaintiff or any taxing authority or any court in relation to any interest which any third-party may have in any claim which Plaintiff is releasing under this Agreement or any interest in any of the proceeds paid to Plaintiff or Plaintiff's Counsel under this Agreement.

PLAINTIFF ACKNOWLEDGES THAT PLAINTIFF ALREADY HAS ATTAINED THE AGE OF FORTY (40) AND UNDERSTANDS THAT THIS IS A FULL RELEASE OF ALL EXISTING CLAIMS WHETHER CURRENTLY KNOWN OR UNKNOWN INCLUDING, BUT NOT LIMITED TO, CLAIMS FOR AGE DISCRIMINATION UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT.

PLAINTIFF IS ADVISED THAT PLAINTIFF HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. PLAINTIFF ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO PLAINTIFF'S SIGNING OF THIS AGREEMENT AND HAS IN FACT OBTAINED LEGAL REPRESENTATION ABOUT THE DECISION TO ENTER INTO THIS AGREEMENT BY PLAINTIFF'S COUNSEL GILLEON LAW FIRM, APC , AND SO DOING, ENTERS INTO THIS AGREEMENT.

PLAINTIFF MAY REVOKE THIS AGREEMENT AS TO AGE DISCRIMINATION CLAIMS ONLY FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY ON WHICH PLAINTIFF SIGNS OR ENTERS INTO THIS AGREEMENT AND THE AGREEMENT IS NOT ENFORCEABLE UNTIL THE REVOCATION PERIOD HAS EXPIRED. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO KELLI M. DREGER AT 200 SPECTRUM CENTER DRIVE, SUITE 500, IRVINE, CA 92618, KELLI.DREGER@JACKSONLEWIS.COM AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF THE PORTION OF THE AGREEMENT AND GENERAL RELEASE THAT RELATES TO ANY POTENTIAL AGE DISCRIMINATION CLAIMS." THE REVOCATION MUST BE POSTMARKED OR IF PERSONALLY DELIVERED RECEIVED BY KELLI M. DREGER AT 200 SPECTRUM CENTER DRIVE, SUITE 500, IRVINE, CA 92618, KELLI.DREGER@JACKSONLEWIS.COM OR HIS/HER DESIGNEE WITHIN SEVEN (7) CALENDAR DAYS AFTER PLAINTIFF SIGNS OR ENTERS INTO THIS AGREEMENT. PLAINTIFF UNDERSTANDS AND AGREES THAT 50% OF THE FULL AMOUNT RECEIVED AS CONSIDERATION FOR THIS AGREEMENT AS SET FORTH ABOVE IS DEDICATED TO PLAINTIFF'S AGE DISCRIMINATION WAIVER AND PLAINTIFF IS NOT ENTITLED TO SUCH AMOUNT IF PLAINTIFF REVOKES THIS AGREEMENT AS TO AGE DISCRIMINATION CLAIMS. IN THE EVENT THAT PLAINTIFF REVOKES THIS AGREEMENT AS IT PERTAINS TO AGE DISCRIMINATION CLAIMS, PLAINTIFF AGREES THAT, IN LIEU OF THE TOTAL PAYMENT AMOUNT SET FORTH ABOVE, PLAINTIFF FORFEITS 50% OF THE FULL AMOUNT RECEIVED AS CONSIDERATION FOR THIS AGREEMENT AND PLAINTIFF WILL ONLY RECEIVE 50% OF THE AMOUNT SET FORTH ABOVE. PLAINTIFF FURTHER UNDERSTANDS AND AGREES THAT PLAINTIFF'S REVOCATION OF THIS AGREEMENT AS IT PERTAINS TO CLAIMS OF AGE DISCRIMINATION SHALL HAVE NO EFFECT ON THE VALIDITY AND

9

ENFORCEABILITY OF ANY OTHER TERM, CONDITION, OR PROVISION OF THIS AGREEMENT, INCLUDING THE RELEASE OF ALL CLAIMS NOT ARISING UNDER THE ADEA, WHICH TERMS BECOME EFFECTIVE WHEN THIS AGREEMENT IS ENTERED INTO OR SIGNED BY PLAINTIFF.

PLAINTIFF UNDERSTANDS THAT THE RELEASES CONTAINED IN THIS AGREEMENT DO NOT EXTEND TO ANY RIGHTS OR CLAIMS THAT PLAINTIFF HAS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT THAT FIRST ARISE AFTER EXECUTION OF THIS AGREEMENT.

PLAINTIFF AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL CONSIDERATION PERIOD.

PLAINTIFF FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS PLAINTIFF HAS OR MIGHT HAVE AGAINST RELEASEES.

[Signature Page to Follow]

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

AMANDA MURPHY                          SHIFTPIXY, INC.

By: _____           By: _____
                                          Jacqueline Calderin
                                          Trustee

Print
Name: AMANDA MURPHY                    Date: 3/11/2024


Date: 01/30/2026

10

<u>EXHIBIT A</u>

_____ ___, 202_

Kelli Dreger
Jackson Lewis P.C.
200 Spectrum Center Dr., Suite 500
Irvine, CA 92618

Re:    *Amanda Murphy v. ShiftPixy, Inc., et al.*

Dear Kelli Dreger:

On _____ ___, 202_, I signed a Settlement Agreement and General Release ("Agreement") in the above-referenced matter. More than seven (7) calendar days have elapsed since I executed the above-mentioned Agreement. I have not revoked my acceptance or execution of that Agreement and hereby reaffirm my acceptance of that Agreement up through the date of this letter.

Very truly yours,

Amanda Murphy

**Exhibit "B"**
(Proposed Order)



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

*In re:*                                                          Case No.: 24-21209-LMI

SHIFTPIXY, INC.,[3]                                        Chapter 7
                                                                    (Jointly Administered)

_____Debtors._____ /

**ORDER APPROVING SETTLEMENT AGREEMENT BY AND**
**BETWEEN JACQUELINE CALDERIN, TRUSTEE AND AMANDA MURPHY**

THIS MATTER came before the Court upon the motion (the "Motion")[4] of Jacqueline

Calderin, as the Chapter 7 Trustee (the "Trustee"), of the jointly administered bankruptcy estates of

ShiftPixy, Inc., ShiftPixy Staffing, Inc., and ReThink Human Capital Management, Inc. (collectively,

the "Debtors"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Local Rules

9013-1(D) and 9019-1, to approve the Agreement entered into by and between the Debtor and

Amanda Murphy ("Murphy", together with the Trustee, the "Parties" and each individually a

_____

[3] The Debtors are: (i) Shiftpixy, Inc.; (ii) Shiftpixy Staffing, Inc.; and (iii) ReThink Human Capital Management, Inc. The address of the Debtors is 1401 NW 25th Street, Miami, FL 33142.
[4] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

"Party"). The Trustee, by submitting this form of order, having represented that the Motion was served on all parties required by Bankruptcy Rule 2002 or Local Rule 2002-1(H), (I) or (J), that the 21-day response time provided by Local Rule 9013-1(D) has expired; that no one has filed, or served on the Trustee, a response to the Motion, and that the form of order was attached as an exhibit to the Motion; and the Court, having reviewed the Motion, having taken judicial notice of the Court record in its entirety, finds that sufficient and proper notice of the Motion was served on creditors and parties in interest, that the Agreement is reasonable and in the best interests of creditors and the estate, and finding good cause to approve the Agreement, accordingly, the Court **ORDERS** as follows:

1.      The Motion is **GRANTED**.

2.      The Agreement attached to the Motion as Exhibit "A" is **APPROVED** in its entirety.

3.      The Trustee is authorized to take any and all actions and execute any and all documents necessary to effectuate the terms of the Agreement.

4.      The Court incorporates the terms of the Agreement into this Order and reserves jurisdiction to enforce the terms of this Order and the Agreement.

# # #

**Submitted by:**
Jesse R. Cloyd
Florida Bar No.: 58388
jrc@agentislaw.com
AGENTIS PLLC
*Attorneys for the Trustee*
45 Almeria Avenue
Coral Gables, Florida 33134
T: 305.722.2002
www.agentislaw.com

(Copy furnished to Attorney Cloyd, who is directed to serve a copy of this Order upon all interested parties)

2